[Sac. No. 4334. In Bank.—July 26, 1930.]

H. C. BUFORD et al., Appellants, v. FLORIN FRUIT GROWERS' ASSOCIATION (a Corporation), Respondent.

Hinsdale, Otis & Johnson and Robert W. Jennings for Appellants.

Elliott, Atkinson & Sitton for Respondent.

PRESTON, J.—Plaintiffs, alleging themselves to be members in good standing of defendant corporation, brought this suit against it, asking for an accounting and a payment to them respectively of their share of certain items in the hands of said corporation styled "refunds" and further alleging a demand upon said defendant for their proportionate share of such refunds and its failure and refusal to comply therewith.

Defendant answered with a denial of the right of plaintiffs and each of them to share in any such refunds and further pleaded that plaintiffs had relinquished and abandoned all their rights to any part of said refunds and as a special defense further pleaded that plaintiffs were at all times herein prior to the fruit season in the fall of 1927, regular members in good standing of said association; that during said fruit season they, and each of them failed, refused and neglected to ship their fruit for such season through defendant corporation and that they and each of them thereby terminated any right to any of the refunds involved in the action. As a further, separate defense, defendant pleaded that plaintiffs withdrew from the association prior to the commencement of the action without the consent of the board of directors and thereby ceased to be members of the association and as a consequence thereof lost any right they might otherwise have had to said refunds mentioned in the complaint.

The court below gave judgment in favor of defendant. As a basis for said judgment it found substantially as follows: That plaintiffs were for a long time prior to November 10, 1927, members of said defendant association; that while such members they agreed with defendant to ship all their fruit through said association and that they did

so at all times mentioned in their complaint prior to said season of 1927; that the fruit of said previous years delivered by plaintiffs to defendant was shipped to defendant, which, in turn, sold it through the agency of the California Fruit Exchange; that the Fruit Exchange upon the sale of said fruit, after deducting from the proceeds of sale, seven per cent as its commissions for selling, and a small amount to cover the estimated expense of handling said fruit shipments, remitted the net sale price to defendant association and the latter thereupon apportioned said sum so received by it among its members, including plaintiffs, and that they had received all such moneys so paid by said California Fruit Exchange except that subsequently the Fruit Exchange deducted from the commissions and expenses retained by it from said sale, the actual cost of conducting its operations and handling said fruit and ultimately returned the excess, with some other items, to defendant association, which excess constituted and became a part of the profits or refunds to defendant association, which were distributable to its members in accordance with the provisions of its by-laws. In other words, the substance of the findings is that the plaintiffs, but for their infraction of the by-laws of said corporation and violation of the shipping agreement made by some of them, would have been entitled to an unascertained sum by reason of the refunds made by said Fruit Exchange to defendant. Continuing, however, the court found that during the fruit season of 1927 plaintiffs became nonactive members of said association and as a consequence, under the by-laws thereof, lost the right to any portion of the refunds or profits to which they would otherwise have been entitled from defendant.

The by-laws which plaintiffs are alleged to have violated are what is known as sections 8 and 9 of article XI, which read as follows: "Section 8. It shall be and is hereby declared to be the duty and obligation of members to market all of their fruit handled by the Association, and to buy all of their shook and other packing supplies and spray material through the Association; and any member who for a season omits so to do, without the consent of the Board of Directors, shall be deemed a nonactive member. Section 9. Any member who becomes nonactive in the Association shall be declared by the Board of Directors to have thereby terminated

his membership and relinquished all interest and claim in the Association, and its funds and properties, and his membership in the Association shall cease.''

The court further found that said by-laws required plaintiffs and each of them and all other members of defendant association to execute a shipping agreement, a pertinent part of which is as follows: ''The party of the first part agrees and undertakes that his property rights and interests in the Florin Fruit Growers Association are defined, determined and fixed by the By-laws of said Association and the proper action of the Board of Directors of said Association thereunder; and in this respect the party of the first part agrees that if he shall withdraw from said Association without first having obtained the written consent of the Board of Directors so to do, or if he shall become a nonactive member of the Association he shall thereby renounce, relinquish and release any and all claims, demands or interest which he has in or to the properties or funds of the Florin Fruit Growers Association, and of, in and to any refunds or moneys which have not been at the time of his withdrawal or becoming a nonactive member, distributed or paid.''

The court concluded its findings by the general finding that the plaintiffs and each of them, without legal excuse, violated said by-laws and said agreement by failing, refusing and neglecting to market or ship their fruit for the season of 1927 through the said association. The court further found that by resolution of November 10, 1927, the board of directors of said defendant declared the membership of plaintiffs and each of them in said association terminated and their certificates of membership canceled and declared that because of plaintiffs' breach of said agreement and by-laws, they and each of them did thereby renounce, relinquish and release any and all claims or demands that they or any of them had in or to the property or funds of defendant association.

The present action was instituted on the twelfth day of January, 1928. Judgment was entered on the twenty-ninth day of October, 1928, and this appeal by plaintiffs upon a full record followed. The refunds involved have accumulated over the years intervening between 1922 and 1927, respectively, and are in essence the balance due the members of defendant corporation as and for the purchase price

of their fruits sold through said Fruit Exchange. (*Hood River Orchard Co.* v. *Stone,* 97 Or. 158 [191 Pac. 662, 666 et seq].)

Appellants assault the by-laws quoted above upon the ground that they are void if given a retrospective operation because without notice they undertake to destroy their vested property rights, and this contention deserves serious consideration. In this connection, an anomaly appears from the by-laws. In article XII is found the following:

"Any member of this Association may be expelled by members representing two-thirds or more of all of the votes of the Association, by resolution passed and adopted at any meeting of the members called for the purpose, or at any regular meeting, the reason for such expulsion being stated in the resolution. But such expelled member shall have his property interest in the Association equitably and fairly appraised by the Board of Directors, and the amount thereof fixed in money within sixty days after the close of the season in which he was expelled, and there shall be paid to such member the amount of such appraisal as and when the same would have been paid had he remained a member of the Association. And further the appraisal of the interest of such member as made by the Board of Directors shall be conclusive and binding."

We thus see that an expelled member retains his property interests until appraised and paid for, but a member who has committed perhaps a less serious offense is in effect expelled and at the same time forfeits his property interests in the association. It should also be noted that respondent, although calling itself a co-operative association, is in fact no more than a private nonstock corporation organized under the law as it stood in 1890. If it were in fact a co-operative organization, these by-laws would have to meet the test prescribed by the following sections of the Civil Code: 653p, subdivision 3; 653w, subdivision 2, and 653jj, subdivision j. As to the validity of by-laws which disturb vested rights, see *State* v. *San Francisco Sav. etc. Soc.,* 66 Cal. App. 53, 57, 58 [225 Pac. 309]; *Bornstein* v. *Grand Lodge,* 2 Cal. App. 624, 630 [84 Pac. 271].

The so-called shipping agreement relied upon by respondent is also assailed as providing a penalty in violation of section 1670 of the Civil Code.

But these suggested serious questions need not be definitely determined as we are led by the further considerations hereinafter noted to the conclusion that respondent is estopped to forfeit the property interests and membership of appellants in said corporation. These further facts may be stated as follows:

At an annual meeting of the members of said corporation on January 4, 1927, there was introduced, voted upon, declared to be passed and thereafter spread upon the minutes, a purported amendment in section 8 of article XI of the by-laws of the association, which said purported amendment reads as follows: "Section 8. It shall be and is hereby declared to be the duty and obligation of members to market all their fruit through the association and to buy all of their shook, and other packing supplies, and spray materials through the association, and any member who for a season omits so to do, without the consent of the Board of Directors, shall pay a penalty of 5 cents per package of his season's crop, shipped outside of the association." Following the declaration by the president of the passage of the amendment and the spreading of the same upon the minutes of the corporation, the said amendment was printed and turned over to the manager of the corporation for enforcement, although it was not mailed out to the membership.

During the year 1927, repeated regular and special meetings were held and the integrity of this amendment was not assailed. In June, 1927, one of the appellants, acting for the remainder of them, secured from the manager of the corporation, a copy of the by-laws, which contained the questioned amendment intact and pasted on the back cover thereof. About the same time, and while acting in the same capacity, he inquired of the president in open regular meeting of the members of said corporation "what the amendment meant?" to which the president replied it "meant just what it said." The president when called as a witness by appellants admitted the truth of this occurrence. Appellants also claimed that in failing to ship their fruit for the season of 1927, they relied upon these assurances from respondent and thought and believed that the terms of said proposed amended by-law measured the penalty for any infraction on their part of the rules and regulations of the corporation respecting the shipment of fruit.

It seems, however, that some time during the fall of the year 1927, the secretary discovered that under article XXII of said by-laws a two-thirds vote of the members or their assent in writing was necessary for the passage of an amendment thereto, and feeling that a majority vote only and not the required two-thirds vote had been cast for said amendment, he essayed to change the minutes of said meeting and in so doing acted with the knowledge of some of the directors. The exact minutes are not in evidence but it is presumed that they were so altered as to show that the amendment had failed of passage. Appellants, however, received no notice of any kind of a change in the minutes or that the corporation intended to disregard the terms of said amendment.

Appellants having in August and September, 1927, failed to ship their fruit as directed, the board thereafter and on November 10, 1927, canceled the membership of each of them and purported to forfeit their property interests in the corporation. The filing of this action for an accounting followed on January 13, 1928. On January 28, 1928, at the next annual meeting of respondent, the members ratified the change in the minutes previously made by the secretary, which presumably showed that the amendment had not been duly passed.

Said section 9 is inapplicable under section 8 as amended; likewise said section as amended removes the penalty under the shipping agreement. The difference between the amendment and the original by-law is simply that in the amendment appellants are penalized only five cents per package for their failure to ship the said crop of fruit and their membership and property rights are otherwise undisturbed, whereas, under the original by-law, the membership as well as all property interests are cut off instanter. It requires no argument to demonstrate that a man might assume the risk under the amendment and decline to assume it under the original by-law.

■ We are unable to see why the doctrine of estoppel *in pais* does not fully meet this situation. It is not enough to say that appellants knew of the by-law requiring a two-thirds vote for the passage of amendments and hence must be bound by such knowledge to know that the by-law had not been legally amended. The point is that respondent led

the appellants to their prejudice to believe that the penalty of five cents per package would measure the limit of their punishment for failure to ship their crops as required. The result of the application of said principle is that as between appellants and respondent at least the by-laws were amended on January 4, 1927, and this without regard to what may have been shown by a later impeachment of the minutes of the corporation. If the responsible members of the corporation had verbally or by resolution assured appellants that the by-law would not be enforced, but instead a five cent per package penalty would be collected, no one would say that the penalty of such original by-law had not been by such conduct waived, if appellants acted upon such assurance to their detriment. It is in evidence also that in at least two instances where other members failed in previous years to ship their fruit, forfeiture had not been exacted under the original by-law.

This solution seems also to work justice as between the parties. Appellants for many years have been prominent members of respondent association; they differed simply as to the method of handling the shipment of their fruit for this season and failed to ship because of certain exactions imposed by the respondent. The matter was the subject of much discussion. To penalize them five cents per package and allow them to retain their membership and property interests seems but fair and equitable under the record as presented. The general doctrine of estoppel has on innumerable occasions been considered by this court, although perhaps not under the exact facts here disclosed, but it is a well-understood principle and where applicable we should not hesitate to apply it. It is well expressed in section 1962, subdivision 3 of the Code of Civil Procedure, as follows: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (See, also, *Dool* v. *First Nat. Bank,* 209 Cal. 717 [290 Pac. 15].)

In this case it was not necessary to plead estoppel for it was relied upon as a defense to matter set up in the answer. (*Llewellyn Iron Works* v. *Abbott Kinney Co.,* 172 Cal. 210, 213 [155 Pac. 986].)

In *Morrison* v. *Dorsey*, 48 Md. 461, it was held that the subscribers to stock of the corporation, who had recognized the validity of the by-laws under which the association acted and upon the faith of which admission others were induced to act, should be estopped to question the mode by which the by-laws were adopted. If this doctrine is applicable to a member or subscriber, it ought also to be applicable in a proper case to the corporation itself. Upon the general subject of waiver and estoppel by a corporation to rely upon its by-laws, see 2 Thompson on Corporations, third edition, section 1158, page 557. If respondent were in fact a non-profit co-operative association, a majority vote only would be necessary to amend the by-laws. (Civ. Code, sec. 653jj). A majority vote only was required to adopt the by-laws and there is respectable authority that, in the absence of a statute to a different effect, the by-laws of a corporation are not binding if a majority of the members will otherwise. (2 Cook on Corporations, 3d ed., sec. 721, p. 529.)

It follows that the finding of the court that the original by-laws, sections 8 and 9, and said shipping agreement, control the rights of the parties and, as a consequence, that appellants have suffered a forfeiture of their rights in the refunds in question, is without support in the evidence.

The judgment is reversed.

Curtis, J., Richards, J., Seawell, J., Waste, C. J., Langdon, J., and Shenk, J., concurred.