[S. F. No. 18445. In Bank. Oct. 9, 1952.]

DOROTHY E. ATHA, Respondent, v. E. H. BOCKIUS et al., Appellants.

Healy & Walcom and Leo J. Walcom for Appellants.

Park Chamberlain for Respondent.

SHENK, J.—The plaintiff, purchaser of an automobile registered in California, brought this action against the defendants for damages for conversion by virtue of their repossession of the automobile under a Texas chattel mortgage. She recovered judgment for the value of the vehicle and the defendants appealed.

The appeal is taken on an agreed statement which shows the following events:

In 1944 in Florida the plaintiff's brother, Cecil B. Mark, bought a 1941 Ford automobile for which he paid part cash and executed a purchase money mortgage for the balance. He obtained a Louisiana registration and license plates and removed the vehicle to Los Angeles. There, on June 18, 1945, he procured a loan from Vine-Sunset Loan Company and executed a chattel mortgage as security. The proceeds of that loan were used to discharge the Florida mortgage. Mark concurrently obtained a California registration and certificate showing himself as registered owner and Vine-Sunset as legal owner. In November, 1945, and again on January 30, 1946, the Vine-Sunset transaction was refinanced and in each instance a new chattel mortgage was executed to the same lender.

In September, 1946, Mark drove the automobile to Texas. Without notification or cancellation of the California registration, he procured another Louisiana registration as of September 28, 1946. On October 1, 1946, on the strength of the Louisiana registration and a Texas address, he obtained a loan from Government Employees Finance Company of Texas executing to it a chattel mortgage on the automobile which was recorded in the county of his Texas residence. After making some payments on that loan he returned to California and replaced the California license plates. On February 14, 1947, he secured a loan from Remedial Loan Company in San Francisco by executing to it a chattel mortgage. With these proceeds Vine-Sunset was paid and Remedial became the legal owner on the title certificate.

In April, 1947, Government Employees Finance Company of Texas traced Mark to California and notified the defendants to search for and repossess the car. On August 26, 1947, Mark sold the automobile to the plaintiff who became the registered owner with Remedial as the legal owner. The plaintiff subsequently paid the Remedial Loan. In October, 1947, the agents

of the Texas company located and repossessed the car, and it was removed to Texas where it was sold. The plaintiff brought the action against the Employees Finance Company of Texas and its California agents. The defendants resisted recovery by the plaintiff on the ground that she was not a bona fide purchaser and that the Texas company's lien was prior and superior.

The trial court found that the defendants seized the vehicle without lawful right; that the plaintiff was the bona fide purchaser and owner of the car without notice or knowledge of the Texas mortgage, without notice or knowledge of Mark's schemes to defraud; and that she did nothing to defraud the defendants or any creditors of Mark; that there was no valid mortgage agreement in existence binding on her, and that her right was superior. The court concluded that the seizure by the defendants was an unlawful conversion and that the plaintiff was entitled to judgment for the reasonable value of the property plus interest and costs.

The contention that the Texas mortgage was invalid under the law of Texas finds no support in the record. It is shown that the mortgage was executed and recorded in accordance with the law of Texas and in the absence of other considerations would be enforceable in that state.

Under the law of comity the Texas mortgage if valid there would be entitled to recognition and enforcement here unless by statute there is an exception to the operation of the comity doctrine in respect to foreign liens on motor vehicles.

In *Mercantile Acceptance Co.* v. *Frank* (1928), 203 Cal. 483 [265 P. 190, 57 A.L.R. 696], following the comity rule, it was held that the statutes of this state did not preclude recognition of a foreign mortgage on motor vehicles as against subsequent purchasers for value without notice and that in the absence of a clear prerequisite for the filing of foreign mortgages on vehicles, an otherwise valid foreign mortgage would be recognized. The court noted with citation of authorities that the general acceptance of the comity rule in the absence of clear regulation to the contrary was based on the great mobility of chattels such as automobiles, the consequent ease of transportation and the opportunity for fraudulent practices. The court also observed that Texas and Louisiana were among four states that did not accept the comity rule. (See, also, Beale, 40 Harv.L.Rev. 809-810, discussion of the "Texas rule.") In *Bank of Atlanta* v. *Fretz* (1950), 148 Tex. 551 [226 S.W.2d 843], however, it is disclosed that in 1939 in the interest of

harmony and fraud prevention Texas enacted a certificate of title law similar to the California statute, whereby it was held to have accepted the majority rule of comity. As in the Mercantile Acceptance Company case the comity rule was held to apply where the local statute requiring the filing and recordation of mortgages did not clearly refer to foreign liens. (For extensive discussion and comparison of various statutes see article, *The Impact of Automobile Certificate of Title Laws on Ownership and Encumbrance,* 36 Minn.L.Rev. 77, Dec. 1951; article, *Horse and Buggy Lien Law and Migratory Automobiles,* by Fairfax Leary, Jr., 96 U.ofPa.L.Rev. 455, (1948); *cf. Kelley Kar Co.* v. *Finkler* (1951), 155 Ohio St. 541 [99 N.E.2d 665]; *Applewhite Co.* v. *Etheridge* (1936), 210 N.C. 433 [187 S.E. 588]; *Armitage-Herschell Co.* v. *Muscogee Real Estate Co.* (1904), 119 Ga. 552 [46 S.E. 634].)

The Mercantile Acceptance Co. case has been followed in this state. (*Deposit G. S. Bank* v. *Hessell Motor Car Co.* (1928), 90 Cal.App. 428 [265 P. 954]; *Motor Accep. Co., Inc.* v. *Finn* (1932), 124 Cal.App. 766 [13 P.2d 761.) Since therefore the statute is deemed to apply to transactions within the state except as expressly otherwise provided (see, also, *Ragner* v. *General Motors Accep. Corp.* (1947), 66 Ariz. 157 [185 P.2d 525]; Goodrich, Conflicts of Laws, 3d ed., § 157, at p. 482; 11 Am.Jur. p. 360, § 75; and cases cited), the statutory provisions do not preclude recognition of the Texas mortgage unless amendments to that end have been enacted since the decision in the Mercantile Acceptance Company case.

The plaintiff relies in part on section 195 of the Vehicle Code which provides that no chattel mortgage on a vehicle registered thereunder, irrespective of whether the registration was effected prior or subsequent to the execution of the mortgage, is valid as against creditors or subsequent purchasers or encumbrancers until compliance with requirements for filing and concurrent registration showing the lienholder as legal owner. The Mercantile Acceptance Company case determines that such requirements cover domestic contracts unless otherwise specified. ■ The additions and amendments involved do not cover or refer to foreign mortgages so as to indicate a legislative rejection of the comity rule as it applies to the facts of this case. Compliance with provisions for registration of foreign vehicles and the mailing of notice of the filing of an application for registration of an out-of-state vehicle to the state of former registration would not elicit information concerning the Texas mortgage. ■ Provisions

for constructive notice as to filed mortgages and for full faith and credit as to valid foreign certificates of title and liens do not support the plaintiff's contention that the comity rule is inoperative here. There is no expression nor a clear implication in the enactments that nondisclosure of the Texas mortgage would affect the foreign mortgagee's rights as against a subsequent purchaser. The amendments relate solely to the same or similar provisions which were held in the Mercantile Acceptance Company case not to provide specifically for recordation of such a foreign mortgage as a prerequisite of validity as against subsequent purchasers or holders of a security interest. In fact the statute contains no provision for the possible recordation of the Texas mortgage under the facts involved. Sections 146 et sequitur of the Vehicle Code supply the method for registration of vehicles previously registered in another state and the means whereby concurrently liens created in such other state may be disclosed with requirement for their recognition by the department. Section 195 also refers to mortgages filed concurrently with the application for registration. Section 196 provides for constructive notice of mortgages deposited with an application for registration. Section 198 states that the method so provided for giving constructive notice of a chattel mortgage on a vehicle registered under the code is exclusive.

The legislative failure for a period of 23 years to deal with the obvious omission indicates approval of the operation of the comity rule as declared in the Mercantile Acceptance Company case. Therefore recordation of the Texas mortgage under the statute was not a prerequisite to recognition of its validity here. The trial court's findings and judgment are not supported by any statutory requirement for recordation.

It is assumed that the foregoing statutory provisions were complied with when the vehicle was originally imported into this state under the Louisiana registration, a California registration obtained and the Florida mortgage discharged by application of the proceeds from the Vine-Sunset loan. As the authorities and texts hereinabove cited also indicate, in the absence of an applicable statutory provision, the problem as to which of opposing victims of a defrauder must bear the loss depends on other considerations. (See, also, *Yarwood* v. *DeLage* (Ohio App., 1949), 91 N.E.2d 272; *Morris Plan Bank of Knoxville, Tenn.* v. *Terrell* (Delaware, 1948), 5 Terry 533 [62 A.2d

452] ; *Commercial Credit Co.* v. *American Mfg. Co.* (Tex.Civ. App., 1941), 155 S.W.2d 834.)

There is nothing in the comity doctrine, however, to preclude application of the universally accepted principle, incorporated in section 3543 of the Civil Code, that when one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must bear the loss. The court in *Mercantile Acceptance Co.* v. *Frank, supra,* 203 Cal. 483, 492, referred to this principle as a necessary consideration in the following language: ''There may be cases in which the owner of a chattel mortgage has not acted with due diligence in following and reclaiming the property which is the subject of his mortgage, or he may be estopped on account of his acts and conduct in reference to the mortgaged chattels from recovering them after their purchase by persons having no knowledge of the mortgage lien, but the complaint in this case shows no facts which would indicate that plaintiff's rights are subject to either of these defenses.''

The principle was stated in *Morris Plan Bank of Knoxville, Tenn.* v. *Terrell, supra* (62 A.2d 452). Under circumstances similar to those involved here it was held that a foreign mortgagee who learns of the removal of the car into another state but through sheer inertia fails to take steps seasonably to assert his claim is deemed to have waived his lien under the comity rule as against subsequent innocent claimants.

In invoking the application of the principle to the facts of this case the plaintiff contends that the Texas mortgagee was negligent in making the loan on the Louisiana papers; also that it was lacking in diligence after tracing Mark and the car to California in not acting promptly in the pursuit of its rights; and that either its negligence in making the loan or its lack of diligence in pursuing the right was the responsible factor in bringing about the loss. If the record shows the Texas mortgagee to have been lacking in diligence in either respect, it would not be entitled successfully to invoke the comity doctrine.

The agreed statement on which this appeal is presented recites an opinion given by Remedial's loan manager that finance companies considered Louisiana registrations, which did not include the listing of prior liens, to be dangerous risks. On this record that opinion or practical consideration should not alone be deemed sufficient as matter of law to support the assertion of the mortgagee's bad faith or negligence in making the loan. The contention is supportable only

if there was sufficient to put the lender on notice regarding possible existing liens. The statement does not show actual knowledge of a California registration. At that time any Florida record would not show a lien in that state. A possible requirement for a Texas registration based on Louisiana papers would reveal nothing further. We are not persuaded that the requirements of reasonable diligence placed the burden on the Texas mortgagee to examine the records in some 48 states with the only alternative a refusal of the loan. In this connection reasonableness demands the balancing of considerations between requirements for caution and those relating to keeping open the channels of trade. Under the particular facts of this case compliance with a requirement, had there been one, of either Louisiana or Texas that registration papers show the Texas mortgage would not give notice of that lien to a subsequent purchaser under the existing California certificate. (*Cf. Rice Street Motors* v. *Smith,* 167 Pa.Super. 159 [74 A.2d 535].) And as we have seen so long as California adheres to the comity doctrine, on the facts here there was no provision pursuant to which the Texas mortgage could have been recorded in order to provide constructive notice to a subsequent purchaser or encumbrancer in this state.

It is not questioned that at the time of the Texas loan Vine-Sunset had a lien against the vehicle in California and that Mark still had a disposable equity. Since the statement of facts on appeal does not indicate that the Texas lender had knowledge of that lien or of the California registration its initial bona fides is assumed. Whatever doubt may be cast thereon is in any event disposed of by the conclusion that after tracing Mark to California the Texas mortgagee did not proceed with diligence to locate the car and pursue the lien right to the end that a possible subsequent innocent purchaser would not be victimized.

After Mark's default under the Texas mortgage and in April, 1947, the Texas mortgagee traced him to California where it requested agents to locate the car and repossess it. Consequently it was surmised that Mark was in California in possession of a car on Louisiana papers which did not register the Texas mortgage. This would reasonably suggest that action be taken promptly in order to protect a subsequent innocent purchaser or encumbrancer in California.

The fact of the Florida lien discharge by proceeds originating from the California Vine-Sunset loan could well have aroused the suspicion of Mark's spurious activities in

California. Subsequently on Mark's return to California the Remedial Loan Company had succeeded to Vine-Sunset's lien interest. Therefore in April, 1947, when Mark was traced to California, that lien interest conceivably had precedence over the Texas mortgage. The record does not show affirmatively whether the defendants made a prompt or any investigation of a possible registration of the vehicle in California. Indexes of ownership and motor number are kept available to public inspection (Veh. Code §§ 130, 150). If an affirmative showing would disclose that they had investigated the registration records and discovered the prior California lien, that discovery could well have been the provocation for failure to repossess until the time when the precedence of the Texas lien would be established by the discharge of the Remedial loan. However, the existence of the prior lien would not excuse the delay in pursuing the right since the mortgagee's duty was not only to protect its own lien but also to prevent loss to possible subsequent innocent purchasers or encumbrancers. In the light of the circumstances which were known to or were discoverable by them, it was foreseeable that the existing lien might be discharged on the creation of a new interest. It was not until four months after the Texas mortgagee followed Mark to California and notified agents to locate and repossess the car that the transfer to the plaintiff and the consequent discharge of the Remedial loan took place. Thereafter the defendants repossessed the car. They do not show that they were prevented from early discovery of the California registration and the location of the car by consulting the public records. That such a course was open to them may not be questioned. They may not assert inactivity as diligence merely because there was no statutory provision showing another possible course of action.[1]

In their answer alleging the superiority of the Texas lien right under the comity rule, the defendants in addition alleged that the plaintiff, the sister of Mark, had taken the transfer of Mark's interest collusively, that Mark was the real owner of the vehicle, and for that reason also the plaintiff's right was inferior to the Texas mortgage. The plaintiff was not required to plead the defense of equitable estoppel. Her complaint relied on her title to the automobile and the comity

---

[1]Since the events herein section 132 of the Vehicle Code has been amended to provide that in proper cases, on the filing of a request by a law enforcement agency or of a judicial restraining order, department action on transfers may be deferred.

doctrine was brought into the case by the answer. In this state of the pleadings, the new matter in the answer must be deemed controverted (Code Civ. Proc., § 462), and there was no need for the plaintiff to plead lack of diligence on the part of the defendants, since estoppel was relied upon as a defense to matter set up in the answer. (*General Motors Accept. Corp.* v. *Gandy*, 200 Cal. 284, 294 [253 P. 137]; *Buford* v. *Florin Fruit Growers' Assn.*, 210 Cal. 84, 91 [291 P. 170].) The question of the mortgagee's diligence was presented to the trial court. The sufficiency of the showing thereon is argued on the appeal. Thus the trial and the appeal were prosecuted on the correct theory of the requirement of diligence under the comity rule.[2]

In accord with the conclusion that the comity doctrine is subject to the application of the principle of section 3543 of the Civil Code, the right of the foreign mortgagee relying upon that doctrine must be denied whenever it is shown by the party relying upon equitable estoppel that the foreign mortgagee did not act with due diligence in following and reclaiming the mortgaged property. (*Mercantile Acceptance Corp.* v. *Frank, supra,* 203 Cal. 483, 492.) Thus in the present case the out-of-state mortgagee made a prima facie case by showing the existence of a valid lien with no facts to indicate negligence. The burden of proving the defense of equitable estoppel then fell on the plaintiff. That burden was met by evidence that the defendants had traced Mark to

---

[2]The Respondent's Brief, Point Two, is headed: "As between respondent and appellants, appellants must bear this loss becaused it happened by appellants' and their principal's negligence." Subheading 1 deals with the Texas Company's claimed negligence in making the loan. Subheading 2 deals with the claim of failure to request the Department of Motor Vehicles at Sacramento to block a transfer. The context points out the failure to notify the department under section 132 of the Vehicle Code (shown to have become effective after the events), or to take any action to protect the lien and possible innocent purchasers. The plaintiff relies on section 3543 of the Civil Code and *Morris Plan Bank of Knoxville, Tenn.* v. *Terrell,* 5 Terry 533 [62 A.2d 452]. The defendants assert that the plaintiff relied solely on her brother and placed no reliance on any acts or representations of the defendants which would amount to an estoppel. In a "Supplementary Brief" filed in the District Court of Appeal the plaintiff again argues the evidence claimed to show the defendants' lack of diligence in pursuing the property and states that the point was presented to the trial court in written form substantially as in her brief, that at no point did the defendants complain of the inclusion of the diligence point, the facts bearing on which were included in the Agreed Statement on Appeal, and that it was clear that the diligence point was understood by all parties to be a part of the case. In the petition for hearing the plaintiff reiterates her contention of lack of due diligence on the part of the defendants.

California in April of 1947, that they did not repossess the car until six months later, that in the meantime and four months after the defendants traced Mark to California the plaintiff's interest was created, that by judicial notice the records at Sacramento disclose the ownership and possible location of automobiles registered in this state and thereby facilitate a recovery before the rights of innocent persons intervene. The defendants failed to controvert this prima facie showing by the plaintiff. All of the facts material to the issue of their negligence are presumed to be in the record. (Rule 52, Rules on Appeal.) That record does not affirmatively state what they actually did in their search for the swindler except to say that they were hunting for Mark in California and that they had no actual knowledge of his or the car's presence in the state until approximately two weeks before the seizure. The record does not state that they made any examination whatsoever of the public records in Sacramento or that the records, if examined, would not have revealed the existence of the prior California lien and possible location of the car. They did not show what other steps, if any, were taken to find Mark. The record thus provides the inferences which support the trial court's finding and conclusion that the plaintiff's right was superior to that of the Texas mortgagee. In this state of the record it is clear that the doctrine of equitable estoppel precluded the defendants' reliance on the comity rule and that the judgment in favor of the plaintiff must be affirmed.

The judgment is affirmed.

Gibson, C. J., Traynor, J., and Schauer, J., concurred.

Carter, J., and Spence, J., concurred in the judgment.

EDMONDS, J.—I join in the holding that the record includes no evidence of negligence on the part of the Texas company either in making the loan or in failing to notify the Department of Motor Vehicles of its claim. I also concur in the conclusion that the rule of comity first stated in *Mercantile Acceptance Co.* v. *Frank*, 203 Cal. 483 [265 P. 190, 57 A.L.R. 696], has not been abrogated by statute and that it should be reaffirmed. However, I do not agree that Atha has met her burden of proving the defense of equitable estoppel or that the record shows any basis for holding that the defendants' superior rights have been defeated by such an estoppel.

The judgment is affirmed upon a theory which was neither briefed by the parties nor discussed by them in oral argument. Despite implications to the contrary in the opinion, Atha made no contention by her pleadings, proof, briefs, or oral argument which in any way questioned the diligence of the Texas company's efforts to locate and repossess the automobile.* She admits that for some months the Texas mortgagee was searching for the car. The only question concerning diligence which she has raised is whether the failure of the out-of-state lender to prevent a transfer by filing some kind of notice with the Department of Motor Vehicles constituted negligence. Her contention upon this phase of the case is, in her own words, "The Government Employees Finance Company was negligent in not properly notifying the Department of Motor Vehicles at Sacramento that a transfer should be blocked." But as correctly stated by Mr. Justice Shenk, "there was no provision pursuant to which the Texas mortgage could have been recorded in order to provide constructive notice to a subsequent purchaser or encumbrancer in this state."

The majority hold that there was a "delay in pursuing the right" of the company to repossess the automobile. The opinion states: "It was not until four months after the Texas mortgagee followed Mark to California and notified agents to locate and repossess the car that the transfer to the plaintiff and the consequent discharge of the Remedial loan took place. Thereafter the defendants repossessed the car. . . . They may not assert inactivity as diligence merely because there was

---

*The footnote summarization of the briefs, included in the majority opinion, refutes the implication of the statement to which it makes reference. Atha's only charges of negligence dealt with the making of the loan and the failure to notify the Department of Motor Vehicles to block a transfer. There is no support in the cited section of the respondent's brief for the statement that, "The context points out the failure . . . to take any action to protect the lien and possible innocent purchasers." The sole lack of diligence presented by the respondent's brief is that "the failure of Appellants or their principal, . . . to take the simple step of blocking a transfer, was sheer negligence." This is also the only question of diligence urged by the Supplementary Brief. The point is there stated: "Furthermore, if the mortgagee had pursued its rights with due diligence, the Department would have stood ready to block further transfers at his request. See Vehicle Code, Sec. 132." Likewise, the petition for hearing attacked only "the conduct of the agents (defendants) in not notifying Sacramento that transfers should be blocked." Nowhere in any of the briefs is there a claim of a lack of diligence in the admitted efforts to locate and repossess the automobile.

no statutory provision showing another possible course of action.''

Rather than showing ''delay'' or ''inactivity,'' the facts agreed upon by the parties are that the company requested the individual defendants to endeavor to find Mark and the automobile and they ''proceeded to do so.'' According to the agreed statement, the defendants ''were hunting for Mark and the car in California for over six months before the seizure.'' Moreover, the Texas company and its agents ''had no actual knowledge of Mark's or the car's presence in California until approximately two weeks before seizure,'' and there is no evidence whatever in the record upon which to base a conclusion that there was either ''delay'' or ''inactivity'' on the part of the Texas company or its California representatives.

The majority opinion correctly states: ''The record does not show affirmatively whether the defendants made a prompt or any investigation of a possible registration of the vehicle in California.'' However, to present the situation of the parties accurately, it should be added that the record contains no evidence which would support the trial court's finding that Atha was a bona fide purchaser. Upon the appeal, the parties do not question either the diligence of the search or Atha's standing as a purchaser in good faith without notice of the Texas lien. Obviously they did not consider it necessary to extend the agreed statement beyond those facts essential to the points which they presented. In fact, Atha stresses in her briefs that evidence to cover all points which she raised was ''meticulously included'' in the agreed statement. The parties rest their case upon two points: whether the rule of comity may be applied to give the foreign mortgagee a superior right and whether, if applied, the right was defeated either by negligence in making the loan or by failing to file some notice with the Department of Motor Vehicles.

If the Texas company's superior right is to be cast aside because it did not include in the agreed statement facts showing the diligence of its search, Atha likewise cannot prevail because she has failed to show that she did not know of the prior recorded mortgage when she purchased the automobile from her brother. The logical conclusion which should be drawn from the reasoning of the majority opinion is that the Texas company was not required to present evidence of diligence because Atha failed to make out a prima facie case showing that she was a bona fide purchaser. Unless

she was such a purchaser, she was not an "innocent" person entitled to the protection of the defense of equitable estoppel.

Certainly the parties should be able to rely with safety upon the accepted rule that "(a)n appellate court decides only the issues presented by the parties." (*Hampton* v. *Superior Court*, 38 Cal.2d 652, 656 [242 P.2d 1].) Also, when an appeal is upon a settled statement, "it shall be presumed in the absence of proceedings for augmentation that it includes all matters material to a determination of the points on appeal." (Rule 52, Rules on Appeal.) The record contains all matters material to the determination of the points raised by the appeal. However, where, as here, the decision is based upon issues other than those presented by the appeal, it should not be presumed that the settled statement includes all matters material to a determination of such additional points.

The burden rested upon Atha, as the party relying upon equitable estoppel as a defense to the Texas company's claim, to prove satisfactorily all of the necessary elements of her alleged defense. "The existence of an estoppel is a question of fact, and the settled rule as to the proof of equitable estoppel is that the burden rests upon the party asserting such estoppel to prove all the elements constituting it 'by evidence having some reasonable tendency to establish the fact.' . . .

"As a rule, manifestly, an equitable estoppel must be proved by oral testimony, hence the rule that certainty is essential to all estoppels is peculiarly applicable to estoppels *in pais*. The estoppel must be so established as to leave nothing to surmise or questionable inference." (*General Motors Accept. Corp.* v. *Gandy*, 200 Cal. 284, 295, 297 [253 P. 137].)

Atha failed to meet her burden because she offered no evidence of a lack of diligence in searching for the automobile. (*Cf. Garrett* v. *Cook*, 89 Cal.App.2d 98, 104 [200 P.2d 21].) In addition, she cannot now rely upon estoppel because the trial court failed to make any finding of, or base its decision on, an estoppel. (*Cf. Judelson* v. *American Metal Bearing Co.*, 89 Cal.App.2d 256, 266 [200 P.2d 836]; *Arp* v. *Blake*, 63 Cal.App. 362, 369 [218 P. 773].) Nor did it find facts from which an estoppel necessarily follows. (*Cf. Corporation of America* v. *Durham etc. Co.*, 50 Cal.App.2d 337, 342 [123 P.2d 81]; *Zenos* v. *Britten-Cook Land etc. Co.*, 75 Cal.App. 299, 308 [242 P. 914]; *Fritz* v. *Mills*, 12 Cal.App. 113, 117 [106 P. 725].) It found only that Atha's right was superior.

From this finding, it concluded that the taking was an unlawful conversion.

The majority agree that "the out-of-state mortgagee made out a prima facie case by showing the existence of a valid lien with no facts to indicate negligence." According to them, "The burden of proving the defense of equitable estoppel then fell on the plaintiff. That burden was met by evidence that the defendants had traced Mark to California in April of 1947, that they did not repossess the car until six months later, that in the meantime and four months after the defendants traced Mark to California the plaintiff's interest was created, that by judicial notice the records at Sacramento disclose the ownership and possible location of automobiles registered in this state and thereby facilitate a recovery before the rights of innocent persons intervene. The defendants failed to controvert this prima facie showing by the plaintiff."

But this is merely paying lip service to the rule of burden of proof without requiring Atha to prove any portion of her defense. Under the rule as stated, Atha need not show that she was a bona fide purchaser. She is not required to present any evidence that the Texas company did not pursue its right with diligence, or that its failure to do so was the responsible factor in bringing about her loss. Nor need she prove that there was any means which, if utilized, would have disclosed the ownership and location of the vehicle, thereby facilitating its recovery. According to the majority, she may admit that the search was made without success for a considerable period of time and then wait for the defendants to prove that it was diligently conducted. This, in effect, reverses the burden of proof, requiring the Texas company to prove that it was diligent despite the fact that Atha made no effort to show the failure to conduct its search with diligence.

Certainly a lack of due diligence is not shown by the mere fact that the search was not successfully completed before Atha's interest arose. According to the agreed statement, agents of the Texas company spent approximately five and one-half months tracking down the swindler and his automobile before they even could ascertain definitely that he was in California. After they learned that the car was in California, it took them two more weeks to find it. From all that appears, the elusive Mark never has been found. Possibly, had the automobile not finally come into the possession of a purchaser,

it would not yet have been discovered, despite the most diligent efforts of highly skilled "skip-state" tracers.

As a practical matter, the mere passage of time, without more, cannot be said to constitute a showing of negligence. An automobile is an exceptionally mobile chattel. In the hands of a swindler, and Mark is characterized as such a person in the record, with skill it can be hidden indefinitely from creditors, no matter how diligently they may search. Diligence should not be defined in terms of skill. The simple showing that the defrauder managed to outwit the defrauded for a period of time does not indicate that the party defrauded was not exerting every effort to recover his property.

Atha presented no "evidence . . . that by judicial notice the records at Sacramento disclose the ownership and possible location of automobiles registered in this state and thereby facilitate a recovery before the rights of innocent persons intervene." Obviously, if the records of the Department of Motor Vehicles disclose any such facts, they must do so by statute or departmental rule, and not by judicial notice. It is not the function of the courts to create legislation by judicial notice. Moreover, neither in the record nor the briefs does Atha even remotely ask the court to take judicial notice that, by statute, the records of the department show those facts.

Of course, the court will take judicial notice of the fact that the Department of Motor Vehicles is required by the Vehicle Code to maintain certain records. (Code Civ. Proc., § 1875.) These records disclose, among other things, the ownership of the vehicle and the address of the owner as they are declared by the applicant for registration. (Veh. Code, § 143.) They also indicate, with an exception not here material, that the vehicle was located within the state when the application for registration was made. (Veh. Code, § 143.5.) The records of such information are open to public inspection. (Veh. Code, § 130.)

However, the court cannot take judicial notice that the records of the department disclose the "possible location of automobiles registered in this state and thereby facilitate a recovery" of them. Insofar as automobiles in general are concerned, there is absolutely no provision in the Vehicle Code requiring disclosure of the day to day location of each automobile registered in California. Such requirement would be impossible of administration. If we turn our attention to an

individual automobile, and this case is not concerned with automobiles in general although the circuitous language of the majority would so indicate, the records conceivably might suggest its possible location. Atha should have offered evidence that the department's record for this particular automobile contained Mark's correct address during the period of search, and further that the automobile was garaged at that address during some or all of the time. This would have constituted proof that a search of the records might have facilitated recovery of the automobile. By such evidence, Atha could have established a prima facie case indicating lack of due diligence. But the record contains no evidence whatever upon this point. There is nothing to show what information, if any, concerning Mark's address was contained in the records of the department, let alone whether such information was accurate.

In the absence of evidence, the court cannot assume that Mark conscientiously kept the department informed at all times of his whereabouts. The record clearly shows that the converse was true. He deliberately withheld from the department any notice of his presence in Texas and his second automobile registration in Louisiana. Even if we assume that the department records showed some address for Mark, in the absence of additional evidence that the automobile could have been found at that place there is a total failure of proof that a search of the records would have facilitated its recovery.

That the majority refuse to apply the rule of burden of proof which they state is clear. On the contrary, they require the defendants to controvert a prima facie showing which never was made. Atha, they say, need only suggest that the ownership and possible location of "automobiles" is disclosed by records of the Department of Motor Vehicles. However, the Texas company is to be limited to the facts of this case and may not indulge in such easy generalities. It must, according to the majority, prove that the department's records would not have revealed the possible location of this particular automobile. In addition, although Atha offered no evidence of a lack of diligence, or of procedures which might have resulted in a more speedy discovery of the vehicle, the Texas company must prove what steps it took to locate Mark. It must do this even though Atha admits that it was hunting for Mark during the entire period and despite the fact that she has never contended that its search was not diligent. Otherwise stated, the Texas company is saddled effectively with the

burden of proof which, it is admitted, a mortgagee should not, and does not, have.

According to the majority, the record "provides the inferences which support the trial court's finding and conclusion that the plaintiff's right was superior to that of the Texas mortgagee." However, the basis for the entire opinion is that the record does not support the trial court's findings and conclusions, but rather shows that the right of the Texas company was superior and was defeated by the doctrine of equitable estoppel. With the exception of the quoted sentence, which is inconsistent with everything else in the opinion, the majority set aside the findings of the trial court because they are not supported by the evidence. Without making any new findings, and without pointing to any evidence of a lack of due diligence from which an estoppel properly could be found, they conclude that the record shows an estoppel. There is no basis whatever for the affirmance of the judgment upon that ground.

The majority apparently rely upon the rule that: "It is . . . immaterial that the theory upon which the judgment may be affirmed is not identical with that relied upon by plaintiffs or by the trial court, since plaintiffs are required only to plead and prove facts sufficient to justify relief, and the trial court's judgment must be affirmed if the findings, supported by the evidence, are sufficient to warrant the relief granted on any legal theory." (*Sears* v. *Rule*, 27 Cal.2d 131, 140-141 [163 P.2d 443].) However, in this case there are no findings sufficient to warrant the relief granted. Nor is there any evidence of lack of diligence from which this court could find an estoppel. Although an appellate court may make additional findings to affirm a judgment, such findings must be based upon evidence. (Code Civ. Proc., § 956a.) "[T]he facts proved must be such that an estoppel is clearly deducible from them. Estoppels are not favored." (*Wheaton* v. *North British & M. Ins. Co.*, 76 Cal. 415, 429-430 [18 P. 758, 9 Am. St.Rep. 216].). Here there has been no proof of facts constituting an estoppel and none has been found.

At the request of the District Court of Appeal upon the hearing before it, the parties filed supplemental briefs raising, for the first time, the question of whether Atha might be subrogated to the rights of the Remedial Loan Company in such manner as to defeat in part the superior right of the Texas company. This issue was neither pleaded nor tried by the parties. The record does not show either the

nature of the transaction whereby Atha acquired her interest from Mark or the amounts of the various mortgages and payments involved. There is thus no evidence which would warrant the appellate court in making additional findings for the purpose of affirming the judgment for Atha in part.

Because the evidence is insufficient to warrant a recovery by Atha upon any of the legal grounds advanced by the parties upon trial or appeal, or even upon the new theory which is the basis of the decision, I would reverse the judgment.