[Civ. No. 21540.   Second Dist., Div. Three.   Oct. 23, 1956.]

AUBREY WALKER et al., Respondents, v. THE HOME
INDEMNITY COMPANY (a Corporation), Appellant.

Thomas P. Menzies and James O. White, Jr., for Appellant.

Crawford & Baker and Ames Crawford for Respondents.

WOOD (Parker), J.—Prior to the commencement of this action, plaintiffs recovered judgment for $9,286.27 against one Paolo Bonomo for damages sustained as a result of an automobile collision.

The present action is to recover the amount of that judgment from Home Indemnity Company which had issued an automobile insurance policy covering the automobile of Bonomo. The agent of the indemnity company, J. D. Palmer, who represented the company in issuing the policy, was also a defendant. In a trial without a jury, a nonsuit was granted as to the agent. Judgment was for plaintiffs against defendant Home Indemnity Company. The indemnity company appeals from the judgment.

Appellant, hereinafter referred to as defendant, denied in its answer that the policy was effective on the date of the collision, and alleged that prior to the collision the policy had been cancelled.

The court found, among other things, that defendant is estopped to claim cancellation of the policy and that the defendant waived any attempted cancellation of the policy.

Defendant contends in effect that the evidence was insufficient to support such findings.

On June 14, 1952, defendant, acting through its agent Palmer, issued its policy of automobile liability insurance covering the automobile of Bonomo for a year, commencing on said date, at a premium of $48.60, and at that time Bonomo paid $10 as part payment of the premium. It does not appear that any arrangement was made as to the payment of the remainder of the premium. Bonomo resided in Yucaipa, California. Palmer's office was in San Bernardino. The defendant, through its Los Angeles branch office, caused an investigation to be made of Bonomo by the Retail Credit Company. In June or July, 1952, a representative of that company went to Bonomo's home and interviewed him. About July 18, 1952, the Los Angeles office of defendant received the investigation report which stated, among other things, that Bonomo's hearing, speech, understanding of English, and financial condition were poor, and that he was not recom-

mended. On August 27, 1952, the Los Angeles office of defendant mailed a notice to Bonomo which was entitled "CANCELLATION NOTICE," and which stated:

"We elect to cancel our Policy No. 7073519 issued to you on June 14th 1952 and hereby give you notice hereof, as provided by the terms of said policy.

"Take notice that at 12:01 A. M., Standard Time, on the 6th day of September, 1952, the said policy will terminate and cease to be in force.

"The excess of paid premium above the pro rata premium for the expired time (if not tendered) will be refunded as soon as practicable.

Respectfully yours,

THE HOME INSURANCE COMPANY
THE HOME INDEMNITY COMPANY

Per ――――――――――――――

Agent"

Bonomo received the notice about August 30, 1952. Palmer received a copy of the notice on August 29, 1952. Bonomo testified that he did not understand the notice; he presumed it was a premium notice; he asked his neighbor to explain and interpret it; the neighbor said "to send the money on through before they cancel on you"; on the same day that he received the notice, he sent a money order for $20 "to the company." Palmer received the money order on September 2, 1952. He testified that he deposited the money order in "my trustee account for the insurance company." Palmer was asked: "That was an account which you kept for the Home Indemnity Insurance Company to deposit sums of money in and forward out for them, is that right, sir?" Palmer replied, "Correct."

On October 12, 1952, a collision occurred between Bonomo's automobile and plaintiffs' automobile. The following morning Mr. Grasso, acting on behalf of Bonomo, telephoned Palmer's office and reported the collision. Also, on that day (October 13) Bonomo mailed a money order for $18.60 to Palmer. This amount and the $10 and $20 paid previously totalled the full amount of the premium.

On October 17, 1952, Palmer mailed a check for $18.82 to Bonomo, as the unearned portion of the premium as of the date of cancellation on September 6, and he also returned the money order for $18.60 to Bonomo. It therefore appears that Palmer, after the collision, deducted $1.18 from the $20

which Bonomo had paid at the time he received the notice of cancellation (which $20 Palmer had held approximately six weeks after the notice of cancellation and prior to the accident, without advising Bonomo whether or not the $20 was acceptable). A few days later Palmer sent his check for $9.15 to defendant as its share of the earned premium. There was no communication between Bonomo and Palmer, or Bonomo and defendant, from August 30 to October 13, 1952. Bonomo testified that between August 30 and October 17, 1952, he believed he had an insurance policy in effect with Home Indemnity Company. He was asked to explain why he believed he had an insurance policy in force between those dates. He replied (through an interpreter) that ''he believed it was in force for the simple reason that after he sent payment of $20.00 and they kept it until October 17, that he had every reason to believe it was in force at that time that the accident occurred.''

Appellant argues, in support of its contention regarding insufficiency of the evidence, that there was no basis for a reasonable belief on the part of Bonomo that the notice of cancellation was a notice to pay more money; and that there was no evidence that Palmer had authority to rescind or waive cancellation of the policy.

With reference to the reasonableness of Bonomo's belief, there was substantial evidence that Bonomo's understanding of English was poor—defendant's records show that an investigator reported that Bonomo's understanding of English was poor; and Bonomo testified that he could not read English very well. The notice of cancellation stated that the policy would be cancelled on September 6 (which was about a week after the notice was received by Bonomo). No reason for the cancellation was stated in the notice. At the time the notice was received, the fact was that more money was due on the policy (the $10 which had been paid was about 1/5 of the full premium of $48.60, and the policy had been in effect about 1/5 of a year—from June 14 to August 30). The neighbor of Bonomo, who read and explained the notice to Bonomo, told him to send in some money before the policy was cancelled. Bonomo sent $20 immediately. The court found that Bonomo was unable to read the notice of cancellation and reasonably believed that it was a notice to pay money on the insurance premium. That finding is supported by the evidence.

With reference to the authority of Palmer, it was admitted in the answer that he had authority to issue policies and collect premiums. The manager of defendant's Southern California office (at Los Angeles) testified that Palmer had authority to return money, and that it was a standard practice among defendant's agents to have a trustee account for money collected as premiums. Palmer testified that he maintained a trustee account for defendant. It is true that the manager also testified that an agent does not have authority "to continue a policy in effect after the company has sent notice of cancellation." It is to be noted, however, that about five weeks before the notice of cancellation was sent to Bonomo, the Los Angeles office of defendant sent a letter to Palmer requesting the return of the Bonomo policy for cancellation. Also, it is to be observed that about three weeks before the notice of cancellation was sent to Bonomo, the Los Angeles office sent another letter to Palmer stating that the policy had not been received, and "We are wondering if you prefer to have us send Mail Notice direct from this office. If we do not hear from you within the next ten (10) days, we will assume that it is your wish to have us cancel the policy and will mail the Notice direct to the assured."

It is also to be noted that Palmer, after he had received a copy of the notice of cancellation, deposited the payment in the trustee account which he kept for the defendant and in which he kept money that belonged to the defendant. He did not advise Bonomo, during the six weeks preceding the collision, that the money was not acceptable. Prior to the collision he did not return any money to Bonomo but he retained it in the trustee account. Five days after the collision, Palmer returned $18.82 of the $20 payment, and he retained $1.18 as payment of balance of earned premium to September 6.

The court found, among other things, that Palmer was authorized by defendant to rescind and waive cancellations. There was no evidence that defendant had expressly authorized Palmer to receive or waive cancellations. It is not necessary to decide whether said finding is supported by the evidence. Regardless of the sufficiency of the evidence to support that finding, there was substantial evidence to support the findings that defendant received and accepted the premium payment sent by Bonomo about August 30, 1952, and that defendant waived the attempted cancellation of the policy and is estopped to claim cancellation. As above stated,

Palmer deposited the $20 in the trustee account where he kept money that belonged to defendant. Palmer said that the money in the trustee account belonged to defendant. The manager of defendant's Los Angeles office said that it was standard practice for defendant's agents to have a trustee account for money collected as premiums. It is conceded, as above shown, that Palmer was authorized to issue policies and collect premiums. The notice of cancellation stated that the excess of paid premium would be refunded as soon as practicable. During the six weeks following the notice of cancellation and preceding the collision, the defendant did not make a refund to Bonomo and it did not advise him whether or not there would be a refund. The failure of defendant to communicate further with Bonomo with respect to a refund, as contemplated in the notice of cancellation, would tend to indicate that defendant was satisfied with Palmer's acceptance of the $20. The trial court could have inferred that Palmer's act in accepting and keeping the $20 payment, after notice of cancellation, was with the approval of defendant, even if Palmer had not been expressly authorized to accept payment after cancellation. Whether there was an estoppel was a question of fact. (See *Parke* v. *Franciscus,* 194 Cal. 284, 297 [228 P. 435] ; *Pacific Gas etc. Co.* v. *State Board of Equalization,* 134 Cal.App.2d 149, 156 [285 P.2d 305].) Also, the question as to whether there was a waiver of the cancellation was a question of fact. (See *Kerr* v. *Reed,* 187 Cal. 409, 414 [202 P. 142].) "If a forfeiture has occurred for breach of any condition in a policy of insurance . . . and the company . . . or its duly authorized agent, thereafter, with knowledge of the facts, unconditionally accepts and retains a premium . . . it thereby waives such forfeiture . . . and is thereafter estopped from setting the same up as a defense . . . ." (Couch, Cyclopedia of Insurance Law, vol. 3, § 687a, p. 2275.) "It is a well-settled rule of law that an insurer which with knowledge of facts entitling it to treat a policy as no longer in force, receives and accepts a premium on the policy, is estopped to take advantage of the forfeiture. It cannot treat the policy as void for the purpose of defense to an action to recover for a loss thereafter occurring, and at the same time treat it as valid for the purpose of earning and collecting further premiums." (29 Am.Jur., § 857, p. 653.) In *Bittinger* v. *New York Life Ins. Co.,* 17 Cal.2d 834 [112 P.2d 621], the court said at page 837 : "But assuming that respondent com-

pany is correct in its contention that the policy provided that it would immediately lapse on non-payment of interest, such provision was waived by the acceptance of the premium payment. The company could not at the same time accept the premium payment and declare the policy lapsed, nor could it lapse automatically at that time.'' In *Bank of Anderson* v. *Home Ins. Co.,* 14 Cal.App. 208 [111 P. 507], it was said at page 218: ''[W]here there is an agency the company is bound as to the third persons dealing with the agent in good faith as to all matters within the scope of his real or apparent authority.'' ■ The extent of the agent's authority, and whether under the circumstances of this case the agent was authorized to accept the $20, were questions of fact. (See *Phillips* v. *Reserve Life Ins. Co.,* 128 Cal.App.2d 540, 546 [275 P.2d 554].) In *Mackintosh* v. *Agricultural Fire Ins. Co.,* 150 Cal. 440 [89 P. 102, 119 Am.St.Rep. 234], it was said at page 448 (in quoting from Cooley's Briefs on Insurance): '' 'If an insurer, or authorized agent, consents to changes which are required to be indorsed on the policy, and promises to make the necessary indorsement, having access to the policy for this purpose, but fails to make the indorsement through mistake, oversight or neglect, the insurer will be bound, if not by a waiver, at least by an estoppel *in pais.*' '' In *Truck Ins. Exch.* v. *Industrial Acc. Com.,* 36 Cal.2d 646 [226 P.2d 583], an employer failed to pay the premium on a compensation insurance policy, and the insurance company mailed a notice of cancellation to the employer at an address given by him. The employer had made various changes of address and by reason of time lost in forwarding mail the employer did not receive the notice of cancellation prior to the time an employee was injured. Other facts were stated therein pertaining to the insurance agent's method of handling the employer's insurance. It was held therein that an implied finding that the insurance company was estopped to rely upon the notice of cancellation was supported by the evidence. In the present case the evidence was sufficient to support the findings that defendant is estopped to claim cancellation of the policy and that the defendant waived any attempted cancellation of the policy.

■ Appellant contends that the court erred in receiving testimony and making findings based on estoppel and waiver which were not pleaded. The complaint alleged that the defendants executed and delivered the policy and that about October 12, 1952, while the policy ''was in full force and

effect," Bonomo caused injuries to plaintiffs, and thereafter plaintiffs recovered the judgment (above referred to) against Bonomo. The answer denied that the policy was in effect on October 12, 1952, and alleged that prior to October 12, 1952, the policy had been cancelled. Defendant objected to the introduction of any evidence as to estoppel and waiver, on the ground that neither estoppel nor waiver was pleaded in the complaint. The objection was overruled. At the conclusion of plaintiff's case, defendant made a motion to strike the evidence as to estoppel and waiver. The motion was denied. At the conclusion of the trial, plaintiff made a motion to amend the complaint to conform to proof by alleging waiver and estoppel. The motion was denied on the ground that the action had been tried on the theory that evidence of estoppel was admissible without pleading estoppel in the complaint. Cancellation was an affirmative defense that was brought into the case by the answer. It was deemed controverted under section 462 of the Code of Civil Procedure. Under the circumstances here, plaintiffs were not required to plead waiver or estoppel. In *Atha* v. *Bockius,* 39 Cal.2d 635 [248 P.2d 745], it was said at pages 644-645: "The plaintiff was not required to plead the defense of equitable estoppel. Her complaint relied on her title to the automobile and the comity doctrine was brought into the case by the answer. In this state of the pleadings, the new matter in the answer must be deemed controverted (Code Civ. Proc., § 462), and there was no need for the plaintiff to plead lack of diligence on the part of the defendants, since estoppel was relied upon as a defense to matter set up in the answer." (See also *Buford* v. *Florin Fruit Growers' Assn.,* 210 Cal. 84, 91 [291 P. 170]; *Arnold* v. *American Ins. Co.,* 148 Cal. 660, 668 [84 P. 182, 25 L.R.A.N.S. 6].)

Appellant contends further that the nonsuit in favor of Palmer and the judgment against defendant are inconsistent. He argues to the effect that the judgment was based upon the acts of the agent Palmer in retaining the money, that the basis for the finding of estoppel was "akin to a tort of misrepresentation," and that if the agent is not liable the principal is not liable. The action was upon the contract of insurance, and the evidence shows that Palmer signed the policy or contract as agent for defendant. Palmer, the agent, was not liable on the contract. (See *Carlesimo* v. *Schwebel,* 87 Cal.App.2d 482 [197 P.2d 167], wherein rules are stated

[pages 488-489] with reference to nonliability of an agent who signs a contract for a disclosed principal.)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied November 14, 1956.