TRI-STATE TELEPHONE & TELEGRAPH CO. v. CITY OF THIEF RIVER FALLS et al.

(Circuit Court, D. Minnesota, Sixth Division. December 30, 1911.)

1. TELEGRAPHS AND TELEPHONES (§ 10*)—STATE LAW—CONSTRUCTION.

Gen. St. Minn. 1866, c. 34, § 13, as amended by Laws 1899, c. 51, gave to corporations organized under Minnesota laws the right "to acquire" by the exercise of the power of eminent domain the necessary property for the transaction of their business, and provided that nothing therein contained should be construed to grant to any person, persons, associations, or corporations any right for the maintenance of a telephone system within the corporate limits of any city or village until the right to maintain a telephone system in such village or city shall have been obtained or for a period beyond that for which the right to operate such telephone system is granted by such village or city. *Held*, that the law of 1899, of itself, gave no right even to a corporation, but merely imposed a limitation on rights already supposed to exist; and hence, after the passage of such act, neither telephone companies nor private persons could obtain any right to use the streets of a city without action by the city.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 10.*]

2. TELEGRAPHS AND TELEPHONES (§ 10*)—FRANCHISES—CLASSES—COMPLIANCE WITH CITY CHARTER PROVISION—ADVERTISING—COMPETITION.

Laws Minn. 1895, c. 8, provides for the incorporation of cities, and section 133, par. 6, gives to a city power to regulate, control, and prohibit the placing of poles and the suspension of wires along and across streets and alleys. Section 142 declares that the council shall not grant a public franchise except on advertisement for proposals therefor as provided by law, and section 145 provides that every advertisement for proposals shall be made by publishing a notice containing a general description of the franchise to be granted. *Held*, that advertisements for proposals so as to create competition in the granting of a franchise to maintain and operate a telephone system in a city would not be regarded as a mere directory requirement, omission of which would constitute a mere irregularity, but that the city had no power to grant a franchise to an individual or a telephone company to maintain and operate a telephone system in the streets of a city without advertisement or competition.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 10.*]

3. TELEGRAPHS AND TELEPHONES (§ 10*)—FRANCHISES—ILLEGAL GRANT BY CITY—ESTOPPEL.

Where a city without authority granted a telephone franchise for the maintenance and operation of a telephone system along its streets, without advertising for proposals, or competition, as required by its charter, and the grantee of the franchise immediately carried the same into operation by expending money in equipping a plant, the city was not by that fact estopped from later questioning the validity of the franchise.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 10.*]

In Equity. Bill by the Tri-State Telephone & Telegraph Company against the City of Thief River Falls and others. On motion for a temporary injunction. Denied.

Harlan P. Roberts, for complainant.
G. Halvorson and E. T. Young, for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WILLARD, District Judge (orally). From the various legislative acts of the state of Minnesota cited by the parties in the arguments, it appears by Rev. St. 1866, c. 34, § 28, that any telegraph corporation organized under the laws of Minnesota had the right to use the public roads for the purpose of erecting its poles and stringing its wires. By Laws 1881, c. 73, that section was amended so as to include telephone corporations organized under the laws of Minnesota.

The complainant is not a corporation organized under the laws of Minnesota. The telephone system of Thief River Falls was constructed by a private person in 1900. Chapter 231 of the Laws of 1901 gave to individuals the same rights with regard to the operation of telephone lines that were by the laws of the state given to corporations. By reason of the laws hereinafter cited it is not necessary to inquire whether Fant, the person who erected the system, could acquire any right to use the streets under the provisions of the Revised Statutes hereinbefore referred to.

Chapter 71 of the Laws of 1893 amended section 1 of chapter 34 of the Revised Statutes of 1866. That section provided for the organization of corporations with the right of eminent domain, and, as amended by the act of 1893, contained this provision:

"But no corporation formed under this title shall have any right to construct, maintain or operate upon or within any street, alleys or other highway of any city or village, a railway of any kind or any subway, pipe line or other conduit for supplying the public with water, gas light, electric light, heat, power or transportation or any improvement of whatsoever nature or kind without first obtaining a franchise therefor from such city or village according to the terms of its charter and without first making just compensation therefor, as herein provided."

It was held by the Supreme Court of Minnesota, in the case of Northwestern Telephone Exchange Company v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175, that the Revised Statutes of 1866 and the act of 1881 gave telephone corporations organized under the laws of Minnesota the right to use not only country highways, but also city streets. This was held also by the Circuit Court of the United States of this district, in Abbott v. City of Duluth, 104 Fed. 833.

In the case of City of Duluth v. Duluth Telephone Company, 84 Minn. 486, 491, 87 N. W. 1127, 1130, the court, speaking of chapter 71 of the Laws of 1893, said:

"In our opinion, this amendment repealed the provisions of section 2641 (Rev. St. 1866, c. 34, § 28), so far as it applied to the state at large, or to new enterprises undertaken by defendant in other cities or villages."

By chapter 51 of the Laws of 1899 another section (13) of chapter 34 of the Revised Statutes of 1866 was amended. That section gave the right to corporations organized under the laws of Minnesota to acquire by the exercise of the power of eminent domain the necessary property for the transaction of their business. The section, as amended by chapter 51 of the Laws of 1899, contained this provision:

"Provided, that nothing herein contained shall be construed to grant to any person, persons, association or corporation any rights for the maintenance of a telephone system within the corporate limits of any city or village in this state until such person, persons, association or corporation shall have

obtained the right to maintain a telephone system in such village or city, nor for a period beyond that for which the right to operate such telephone system is granted by such city or village."

This law of 1899 of itself gives no right even to a corporation. It is simply a limitation on rights already supposed to exist.

From all these laws it is apparent that, so far as cities are concerned, a telephone corporation, and therefore a private person, could not in 1900 obtain any rights in the streets of a city without action on the part of the city.

Chapter 8 of the Laws of 1895 provides for the incorporation of cities, and Thief River Falls was incorporated under that law in 1896. In my view of the law, the rights of the parties to this controversy must be determined exclusively by the provisions of this act. It contains various provisions relating to the subject-matter of this suit.

Section 115 provides that the style of all ordinances shall be: "The city council of the city of  *  *  *  do ordain as follows." That section also provides that no ordinance, except for general appropriations, shall contain more than one subject, which shall be expressed in its title.

Section 135, par. 6, gives the city power to regulate, control, and prohibit the placing of poles and the suspension of wires along or across the streets and alleys. Paragraph 78 of that section provides that no franchise shall be granted save by a three-fourths vote of all members elect of the council.

Section 138 provides that no exclusive or perpetual franchise or privilege shall be granted by the city council.

Section 142 provides that the council shall not grant any public franchise, except upon advertisements for proposals therefor as provided by law.

Section 144 provides that the council shall require of every party accepting a franchise from the city the giving of a bond.

Section 145 provides that every advertisement for proposals shall be made by publishing a notice containing a general description of the franchise to be granted.

The ordinance in question contains no title. It contains no limit as to the time during which Fant and his assignees should have the right to maintain their system in the streets of the city. There is no proof that the ordinance was passed by a three-fourths vote of the members of the council. There is no proof that any proposals were ever asked, as provided in section 142; no proof that any bond was ever given, as provided in section 144; and no proof that any advertisement was ever published, as provided in section 145.

In view of these provisions of the charter, the first question is the question which I asked Mr. Roberts, whether the action taken by the city council of Thief River Falls in May, 1900, was the granting of a franchise. I understand from his answer that there is no contention on the part of complainant that the council did not grant a franchise at that time. It, however, makes no difference whether the word "consent" or the word "franchise" is used. The case comes within the act of 1895 under which this city was incorporated, and from which it derives all its powers.

I pass by many of the questions presented. I do not propose to decide the question whether this contract or this ordinance was void because there was a grant in perpetuity; or as to whether the ordinance was void because it contained no title; nor do I undertake to decide whether the original grantee was the one who constructed the telephone plant. In my judgment, the provisions of the charter which require previous advertising for proposals were binding upon the city, and no ordinance, contract, or franchise could be made or given unless these provisions of the charter were complied with.

It is said that there is an allegation in the bill that this ordinance was duly passed and published by the city council, but in an application for a temporary injunction I could not allow it to issue unless it was undisputed that these provisions had been complied with; and, in my judgment, it is evident that they were not. It is not claimed that any proposals were invited. It is not claimed that any advertisement was made. But it is claimed that there was a law under which the city council had power to grant a franchise of this kind; and that, although the city council did not comply with that law, yet its failure to comply with it constituted merely an irregularity; that the provision with regard to advertising for bids and instituting competition for the purpose of selling the franchise was merely a formality; that, although the law required it, yet if this formality was dispensed with, and these irregularities were committed, yet the conduct of the city thereafter has been such that it and its inhabitants are now estopped from alleging the invalidity of the ordinance.

The purpose of the Legislature is very plain, and the reasons why it inserted these provisions are well known. It was common talk, and a matter of common knowledge throughout the United States, that franchises had been sold and given away, and that the action of the city councils had not always been governed by considerations of what was for the best interest of the public whom they were supposed to be serving; but that, on the contrary, there had been a great deal of corruption with regard to the granting of such permits and franchises It was the purpose of the law, undoubtedly, to correct these evils, and absolutely to prohibit cities organized under that act from granting a franchise unless there was some sort of competition, and unless the people had some opportunity of knowing what was going on, so that other persons might have a chance to obtain the rights which the person applying for the franchise wanted to obtain for himself.

That being the purpose of the law, it seems to me that it cannot be said that a failure to advertise for bids was a mere irregularity, or that the requirement as to competition was a mere formality which could be dispensed with, and the ordinance still be declared valid. It may be difficult to tell what constitutes a formality; it may be difficult to tell what constitutes an irregularity; but, as I look at it, these provisions were so vital that no court would be justified in saying that a failure to comply with that part of the charter which insisted upon competition was neglecting a formality, or that a failure to comply with that part which called for advertising for bids was a mere irregularity.

As I suggested to Mr. Roberts, there could be no easier way to completely nullify the statute than the one employed in this case. If this ordinance is good, it is good although the people who passed it ignored the law, in granting a contract without, as far as the case shows, giving any notice to anybody. In such a case as is thus presented, can the doctrine of estoppel apply? It appears that Mr. Fant commenced the construction of his telephone system at once, worked at it continuously, and completed it within the time when probably every man who had granted the right to him was in office. They of course would be the very last persons to object to it.

In the construction of a telephone plant the principal expense of the same lies in the installation of the plant itself. I suppose the great bulk of the money was expended in this case when the plant was constructed.

The doctrine of estoppel rests upon the proposition that a person has expended money relying upon the action or representations of the person sought to be estopped. In the present case, the great part of the money having been expended at once, the estoppel would arise at once. If the theory of the complainant is correct, the city was estopped in 1901 just the same as it is estopped now in 1910. It is very easily seen, therefore, that it would be within the power of a city council and a corporation desiring a franchise to entirely nullify the law, by the city granting a franchise without notice, without soliciting proposals, and without advertising, and the corporation commencing at once the installation of its plant, thereby making the estoppel complete, while the council granting the franchise was in office, and before the general public had an opportunity to know what had been done, or to become aroused to the necessity of action.

The cases to which my attention has been called come very far from holding that in a case like this there can be an equitable estoppel against the city. One case from Vermont held that the city was estopped where the only defect was that the council acted by resolution instead of by ordinance; but whether action should be taken in one of these ways or the other does not involve any question of public policy. So there might be an irregularity in a city council failing to insist upon a bond; but the provision of the charter which required such a bond was not a provision which involved any principle of public policy. But, when we come to the granting of a franchise, there is involved a question of public policy, and an important one; a question which had agitated the country for years, and which found expression in that very act of the Minnesota Legislature.

Believing as I do, I hold that a city council organized under this act has no right to grant a public franchise to a street car company, a telephone company, a gas, water, or electric light company, or any company of a like nature, without advertising or without any competition whatever, and that such a contract cannot be valid or binding upon the city, though the person receiving the franchise has constructed the plant.

The motion for a temporary injunction is hereby denied.