[Civ. No. 12343. Third Dist. Mar. 2, 1971.]

SOPHIE VARELA, Plaintiff and Respondent, v.
WELLS FARGO BANK, Defendant and Appellant.

## COUNSEL

Brobeck, Phleger & Harrison and Jerry K. Cadagan for Defendant and Appellant.

William B. Dobson and Robert N. Barbour for Plaintiff and Respondent.

## OPINION

**BRAY, J.**\*—Defendant appeals from judgment in an action for conversion in favor of plaintiff for $2,145.

### QUESTIONS PRESENTED

1. Sufficiency of the evidence.

2. Sufficiency of the findings to support the conclusion of estoppel or waiver.

3. In any event there was conversion of the rings.

### RECORD

Plaintiff filed a complaint charging defendant with conversion of her 1965 automobile and three diamond rings located within the vehicle's glove compartment. Defendant answered denying that the rings were in the

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

glove compartment and affirmatively pleading that the vehicle was seized with plaintiff's consent and under the terms of a contract of conditional sale of the auto executed by plaintiff and held by defendant. The case was tried without a jury. After a trial the court made certain findings of fact and conclusions of law which were objected to by defendant. Amended findings of fact and conclusions of law were then made determining that defendant had converted the auto and the rings and that the value of the vehicle was $145 and the value of the rings was $2,000. Judgment was rendered in favor of plaintiff for $2,145.[1]

On November 25, 1964, plaintiff purchased a 1965 Ford from Ellsworth Harold Ford and as part of the transaction executed a conditional sales contract with the Ford agency, which contract was assigned to defendant bank. The contract called for monthly payments. During the period from November 25, 1964 to November 3, 1966, receipts were given for 26 payments. The payments had been made at various times during the months, some at the first of the month, some in the middle and some at the last of the month.

About September 30, 1966, defendant repossessed the auto but returned it to plaintiff on October 5, 1966.

On November 2, 1966, defendant again repossessed the auto. At the time there were three diamond rings and other personal property in the car. Subsequently, plaintiff demanded of defendant the return of the auto and the personal property. The auto and personal property not being returned, plaintiff filed this action claiming conversion of the car and its contents.

1. *Sufficiency of the evidence.*

 The record shows that there was considerable confusion in defendant's records of the payments made by plaintiff. However, as the court found, the payments due under the contract on October 1 and November 1, 1966, had not been paid on November 2, the day defendant seized the auto. The court found in effect that defendant by reason of its conduct was estopped to claim the right to seize the auto when it did or had waived such right.

On October 5, 1966, when the auto was returned after the first repossession, apparently a payment was made that was reflected on stub number 24 in plaintiff's payment coupon book and also on defendant's computer. All parties concerned were under the impression that plaintiff's payments were then up to date. However, defendant's computer record did not

---

[1]The court found against plaintiff's claim of damages due to distress of mind and body because of the seizure of the car and against her claim for exemplary damages.

reflect a payment allegedly made on September 30, 1966, despite the fact that plaintiff's stub book reflected that such payment had been made, since stub number 22 was receipted by one of defendant's tellers as paid. On October 10 plaintiff's husband went to the bank and the discrepancy was discussed, the defendant stated that if he would make one more payment, then the October 5 payment would be credited to September, and if Mr. Varela would make a payment that day (October 10) such payment would be for October 1 and everything would be straightened out. Although no money in fact changed hands, stub number 23 was receipted. (The court found that no money had been paid.)

Thompson of the bank found out on the afternoon of October 10 that no money had been paid that day. He visited plaintiff and told her that she still owed money. Thompson testified that plaintiff claimed the receipt was marked but she would come to the bank to check. The following day Thompson sent a letter to plaintiff erroneously informing her that a September 10 receipt, rather than the October 10 receipt, had been mistakenly given. On October 13 plaintiff came to the bank and was told that her payments were not up to date according to the bank records, to which she replied that her husband had made a special trip to make the disputed payment but that she would get some money.

However, on October 25, Stevenson, who was in charge of delinquent accounts for the bank, made out a "Summary and Transmittal of Account to Loan Adjustment" on plaintiff's account. This document is used to transfer troubled accounts to another department for collection. In that summary several errors were present: September 1, 1966, was stated as the date of default, without further explanation, despite the fact that plaintiff's records showed a payment on September 30; the payment on August 8, reflected both in plaintiff's records and on defendant's computer records, was not copied into the summary; and despite the fact that the bank's employees had seen both plaintiff and her husband to discuss the problem some 12 days previously, the summary reflected that defendant could not locate plaintiff, and that there was a "possible skip." Repossession of plaintiff's auto on sight was recommended. It was repossessed November 2. Plaintiff made her November payment the following day but it was returned.[2]

That the court was justified in holding in effect that the bank was estopped or had waived the right to assert plaintiff's failure to make all her payments prior to repossession is apparent.

---

[2]There was some confusion between plaintiff's testimony and that of her husband. Plaintiff testified that two payments were made on October 5, while he testified that one was made September 30 and one on October 5. The court found that the October 1 payment was not made.

Defendant's tellers had receipted three of plaintiff's payment stubs and plaintiff's records showed that on October 25, the day defendant transferred her account as a "trouble" account, plaintiff's payments were up to date. Plaintiff was entitled to rely on these records. Plaintiff was never clear as to which payments, if any, were delinquent, especially in light of the letter that erroneously informed her of a payment which was erroneously receipted and the fact that her payment stubs were up to date. Even after talking to defendant, plaintiff could still be confused and could be said not to have knowledge of the true facts.[3] (Since defendant was still confused on October 25 when plaintiff's account was transferred, plaintiff could have been confused on October 13.) It could also be inferred that defendant gave plaintiff an extension of time to pay, when on October 13 the bank's Stevenson told plaintiff of the confusion in the account, and plaintiff said that she would get the money, defendant apparently made no further demand.

Defendant reinforced its erroneous conduct in relation to plaintiff's account, when in its summary issued 12 days after plaintiff visited the bank, it failed to list the August 8 payment, despite the fact that both plaintiff's payment stub and defendant's computer record showed that this payment had been made. September 1, not October 1, was listed as the date of default. Thus plaintiff's account was transferred to the bank's agency as being "delinquent" for August and September, which it was not, and with a recommended "repossession on sight." Defendant's conduct thus led to plaintiff's injuries. The evidence clearly supports the court's implied conclusion that because of that conduct defendant was estopped or had waived the right to seize possession of the car.[4]

## 2. *Estoppel.*

█ A finding on the issue of estoppel will be deemed sufficient "if it recites facts from which an estoppel must necessarily flow." (*Higson* v. *Montgomery Ward & Co.* (1968) 263 Cal.App.2d 333, 342 [69 Cal.Rptr. 497].) The same is true of waiver. (*Jones* v. *Sunset Oil Co.,* 118 Cal.App.

---

[3]Findings are liberally construed to support the judgment and every inference that can reasonably be deduced from the evidence that will support the finding must be accepted. (*Winegar* v. *Gray* (1962) 204 Cal.App.2d 303, 314 [22 Cal.Rptr. 301].)

[4]Plaintiff did not plead estoppel. Although, where estoppel is an element of plaintiff's action, it must be specifically pleaded in the complaint (*Windsor Mills* v. *Richard B. Smith, Inc.* (1969) 272 Cal.App.2d 336 [77 Cal.Rptr. 300]); such pleading is apparently not necessary where evidence of estoppel controverts new matter raised in the answer. (See *Walker* v. *Home Indemnity Co.* (1956) 145 Cal.App.2d 318, 324-325 [302 P.2d 361]; *Atha* v. *Bockius* (1952) 39 Cal.2d 635, 644-645 [248 P.2d 745].) In addition, estoppel need not be pleaded where a plaintiff in whose favor it exists is without knowledge that his claim must ultimately rest on it. (*Higson* v. *Montgomery Ward & Co., supra,* 263 Cal.App.2d at p. 342.)

2d 668, 671 [258 P.2d 510].) The four essential elements to the application of the doctrine of estoppel are (1) knowledge of the facts by the party to be estopped; (2) intention that his conduct be acted upon, or he acts so that the party asserting estoppel has a right to believe that the conduct is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) reliance on the conduct to his injury. All of these elements appear in the instant case. (*Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 544 [81 Cal.Rptr. 112]; *Domarad* v. *Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 553 [76 Cal.Rptr. 529].) " 'Negligence that is careless and culpable conduct is, as a matter of law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel.' " (*Domarad* v. *Fisher & Burke, Inc., supra,* at p. 555; *Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.,* 54 Cal.2d 773, 778-779 [8 Cal.Rptr. 448, 356 P.2d 192].)

The court found that while on November 2 neither the October 1 nor November 1 payments had been made, yet plaintiff's stub number 23, representing payment made on October 5, had been receipted for by defendant although not in fact paid; that the letter dated October 11, *1968* (it should have been *1966*) giving notice to plaintiff of the error in stub number 23 referred to the wrong date, that of September 10; and that numerous errors including the omission of a payment that had been made were present in the summary which recommended repossession. These were errors that defendant had the best means of discovering, and thus defendant was in a position to know the true state of facts. (See *Jessup* v. *Cattle Center, Inc.* (1968) 259 Cal.App.2d 434, 435 [66 Cal.Rptr. 361].)

Since plaintiff's records were receipted by defendant and did not show the October 1 default, and she was not correctly informed of defendant's error in the letter sent her, plaintiff could assume that in fact she owed nothing more until November. The summary calling for repossession was issued before the November 1 payment was even due. The conduct of the bank indicated that plaintiff was not expected to pay the installments on the exact date when due. It is clear that had it not been for the errors in the summary, including the statement that plaintiff could not be located, there would have been no repossession on November 2.

In the conversations between the defendant and plaintiff and her husband there was nothing to indicate that her car was to be repossessed on November 2, particularly as it had been shown that the bank's letter of October 11 demanding payment had contained errors as to payments made. While it is true that some three notices to plaintiff to pay had been given about three weeks before the repossession, the conversations between defendant and plaintiff and her husband concerning the error reasonably led

her to believe that she was being given time to pay any delinquent installment. The repossession must have struck her out of a clear sky.

■ Defendant contends that the findings are not sufficient to support the court's conclusion that defendant was estopped to repossess the auto. Plaintiff takes the position that if the findings are insufficient, the doctrine of invited error prohibits defendant from raising that fact as defendant prepared the findings. Plaintiff cites *Johnson* v. *Rich* (1957) 150 Cal.App. 2d 740 [310 P.2d 980], and *Smith* v. *Royal Mfg. Co.* (1960) 185 Cal. App.2d 315 [8 Cal.Rptr. 417]. ■ The rule, that where findings are prepared by counsel designated by the court no claim of insufficiency will be entertained on appeal from the judgment, only applies if "it appears that the attorney was at liberty to use his own judgment as to the text of findings . . . ." (*Johnson* v. *Rich, supra,* at p. 747.)

■ The record shows that defendant objected to the original findings and sought more specific findings. Amended findings were signed by the judge, which found concerning some, but not all, of the specifics requested by defendant. Defendant claims that the judge instructed defendant's attorney to prepare the amended findings in such a way that he was at "liberty to use his own judgment as to the text." We do not have before us any record of the hearing on defendant's request for amended findings. Whether defendant's attorney was or was not bound by instructions of the judge is immaterial as we find that the findings are sufficient to support the conclusion of estoppel. Although the trial court did not expressly use the words "estoppel" or "waiver" in the findings, it is necessarily implied in the conclusion "As a result of the conduct of . . . Wells Fargo Bank referred to . . . said Wells Fargo Bank did not have the right to seize possession of said vehicle . . . ." ■ " 'A reviewing court will not disturb the implied findings made by a trial court in support of a judgment any more than it will interfere with express findings on which a final judgment is predicated.' " (*Matson* v. *Jones* (1969) 272 Cal.App.2d 826, 832 [77 Cal. Rptr. 717], quoting from *Goldberg* v. *Paramount Oil Co.,* 143 Cal.App.2d 215, 223 [300 P.2d 329].) Particularly is this so, if, as here, the determination of estoppel or waiver results by necessary implication from the findings made and is consistent with the judgment. (*Goldberg* v. *Paramount Oil Co., supra,* at p. 223; *Matson* v. *Jones, supra,* at p. 832.)

### 3. *Conversion.*

■ Defendant contends that there was no conversion of the rings because it did not know of their presence in the auto nor did it intend to take ownership of them. However, "[t]he intent required [to constitute conversion] is not necessarily a matter of conscious wrongdoing. It is rather

an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." (Prosser, Law of Torts (3d ed. 1964) § 15, p. 83.) Necessarily, where an auto is repossessed, unless the repossessor empties the glove compartment and the trunk, it intends to possess at least temporarily its contents and to deprive the owner thereof. Here, having taken possession of the car with the rings in it, to the possession of which rings it had no right even temporarily, it was the bank's duty to protect the rings. Having taken them without right and having failed to return them on demand, defendant is guilty of conversion.

As said in *Poggi* v. *Scott* (1914) 167 Cal. 372, 375 [139 P. 815]: ▮ "The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action." ▮ Thus, so far as the rings are concerned, defendant would be liable for their conversion even if it had had the right to repossess the vehicle. It took them from plaintiff's control and possession without right and has never returned them.

*Itano* v. *Colonial Yacht Anchorage* (1968) 267 Cal.App.2d 84 [72 Cal. Rptr. 823], cited by defendant, is not in point. There, the operator of a wharf for the mooring of boats, after repeated notices to the plaintiff who had been renting space from defendant for his boat and who was in arrears in rental, moved the boat to another location where, after a time, it sank. The court held that an action for conversion of the boat would not lie, the court pointing out that at no time was the plaintiff deprived of the use of the boat nor were extra moorage charges incurred in the new location, and that merely moving the boat from one anchorage to another, without "preventing the owner from exercising all rights of ownership in such personal property, is not enough to constitute a conversion." (P. 89.) In our case it was a matter of taking possession of the rings, thereby depriving the owner of them, and not returning them.

Judgment is affirmed.

Pierce, P. J., and Regan, J., concurred.