September 25, 1992

CLERK OF COURT
SUPREME COURT. CNMI
FILED

92 SEP 25 P12: 59

BY: _____

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

JUAN E. AQUINO,                )        APPEAL NO. 91-012
                              )        CIV. ACTION NO. 90-035
        Plaintiff/Appellee,   )
                              )
            vs.               )        OPINION
                              )
TINIAN COCKFIGHTING BOARD,)
                              )
        Defendant/Appellant.  )
_____)

Argued and submitted February 20, 1992

Counsel for Plaintiff/Appellee:    Reynaldo O. Yana, Esq.
                                   P.O. Box 52
                                   Saipan, MP  96950

Counsel for Defendant/Appellant:   Theodore A. Mahr, Esq.
                                   Office of the Attorney General
                                   Administration Building, 2nd Fl.
                                   Capitol Hill
                                   Saipan, MP  96950

BEFORE: DELA CRUZ, Chief Justice; VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

The Tinian Cockfighting Board ("Board") appeals a Superior Court decision ordering the Board to issue the exclusive Tinian cockfighting franchise license to Juan E. Aquino ("Aquino"). The Board contends that its failure to comply with the newspaper publication statutory requirement rendered the first bidding

287

process (in which Aquino participated) defective. It also contends that Aquino did not properly plead the doctrine of governmental estoppel and has waived it; but that, even if he did, it should not apply. Finally, it contends that the trial court lacked subject matter jurisdiction over this matter because Aquino did not timely appeal the Board's "rejection" of his bid.

Because we find that (1) the newspaper publication requirement of the Tinian Cockfighting Act is mandatory, (2) the equitable doctrine of governmental estoppel is inappropriate to apply because of the statutory policy underlying the publication requirement, and (3) the person subsequently awarded the franchise should have been joined as an indispensable party, we reverse and vacate the judgment and remand the case for further proceedings.

## I. FACTS

On June 5, 1989, the Board issued a notice of invitation to bid for the exclusive, Tinian cockfighting franchise, pursuant to the Tinian Cockfighting Act of 1988, 10 CMC § 2411, et seq. (the "Act"). The Board posted the notice on public buildings, but failed to publish it in a local newspaper of general circulation as required by 10 CMC § 2415.

The Board held a pre-bid conference on July 14, 1989, at which Aquino was present. On July 17, 1989, the Board publicly opened and announced the bid submitted by Aquino, who was the sole bidder. Aquino had submitted a bid of $5,000 for the franchise. Accompanying his bid was a check for $1,000, the required twenty

percent deposit of the stated bid. This sum was deposited into the CNMI's general treasury.

A few days later, Aquino paid the bid balance of $4,000. After that, the Board met to discuss the franchise license, during which meeting the Board's Secretary raised concern over Aquino's prior criminal record. The Board decided to seek the opinion of the Attorney General on the matter.

In September of 1989, the Attorney General advised the Board that Aquino's prior criminal record was not a bar to his obtaining the franchise. However, the Attorney General notified the Board that it had failed to publish the notice to bid in a newspaper of general circulation as required under the Act. The Attorney General, viewing the publication requirement as mandatory, advised the Board that it should return to Aquino his bid money and re-issue another notice of invitation to bid. Brief of Appellant at 9.

On October 3, 1989, the Board informed Aquino that his bid was being rejected. It returned his $4,000 check, and asked him to re-submit another bid.[1]

The next day, October 4, 1989, the Board issued a second notice to bid. Aquino refused to submit another bid pursuant to the second notice and did not participate. The franchise was awarded to David Cing ("Cing"), one of the bidders responding to the second notice. The trial court found, as to the second notice

---

[1] The $1,000.00 deposit apparently was not returned to Aquino. See Transcript of Proceedings at page 046 ("I never receive the $1,000 and I don't know where is the $1,000 now." Id. at lines 5-6; Testimony of plaintiff Juan Aquino).

289

also, that the Board "posted the notice on public buildings, but again failed to publish the notice in a newspaper of general circulation for three consecutive weeks." Decision at 3 (emphasis in original).

Aquino sued the Board on January 12, 1990, alleging that under the first notice to bid issued June 5, 1989, he had submitted the winning bid and thereafter paid to the Board the balance of his bid ($4,000), which was accepted. Aquino concluded that because he complied with all the requirements of the Act, he was entitled to the franchise license and for damages suffered as a result of the Board's refusal to issue him the license.

The Board denied Aquino's allegations and defended its action alleging, inter alia, that the law had not been complied with through the failure to publish the original notice to bid in a newspaper, and that the second notice to bid was undertaken to comply with the publication requirement of the Act.

After presentation of all the evidence, the trial court asked each party to submit proposed findings of fact and conclusions of law to the court. In his submission, Aquino raised for the first time the issue of estoppel against the Board.

The trial court determined that although courts ordinarily are reluctant to apply the doctrine of estoppel against the government or its agencies, that doctrine is applicable where the government's action amounts to "affirmative misconduct." It found that "the Board's actions clearly rose to a level of affirmative misconduct." Decision at 5.

290

The trial court ruled that the Board was estopped from refusing to issue the cockfighting franchise license to Aquino because (i) the Board Secretary's post-bid actions "obviously induced [Aquino] to believe he had received the franchise. . . "; (ii) the Board placed no conditions upon its acceptance of the balance of Aquino's bid; and (iii) Aquino relied on the Board's actions to his detriment. Decision at 4.

The trial court concluded, as a matter of law, that the Board's failure to publish both notices to bid did not render the bidding process void, but "[i]nstead . . . under the circumstances of this case, the Board's failure to follow the publishing requirement in 10 CMC § 2415 constituted an immaterial irregularity in the bidding process under 10 CMC Section 2416(f)." Decision at 7 (emphasis in original). The trial court ordered the Board to award the franchise to Aquino.

## II.  ISSUES PRESENTED AND STANDARD OF REVIEW

The Board raises several issues on appeal:

1. Whether the newspaper publication requirement under the Act is mandatory. This is a question of law which we review de novo. In Re Estate of Guerrero, No. 91-014 (N.M.I. Sept. 21, 1992).

2. Whether Aquino properly pleaded the doctrine of estoppel, and whether the trial court erred in applying the doctrine against the Board. These are mixed questions of law and fact which are reviewable de novo. In Re Estate of Guerrero, supra.

3. Whether the trial court lacked jurisdiction to review the

291

Board's decision rejecting Aquino's bid is an issue of law reviewable <u>de</u> <u>novo</u>. <u>Nansay Micronesia Corporation v. Govendo</u>, No. 90-040 (N.M.I. Feb. 28, 1992).

4. Whether the person subsequently awarded the cockfighting franchise is an indispensable party to this litigation is also an issue of law reviewable <u>de</u> <u>novo</u>. <u>Provident Bank & Trust Co. v. Patterson</u>, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); <u>see also</u>, <u>Sablan v. Inos</u>, No. 91-018 (N.M.I. Dec. 26, 1991)(Order).

## III.   ANALYSIS

### A.   The Newspaper Publication Requirement.

We first examine whether the newspaper publication requirement of the Act is mandatory.   Section 2415 of the Act, in part, provides:

> Notice of invitation to bid for the award of a franchise license to operate a cockfight <u>shall be made publicly</u>, with copies of the notice posted at public buildings and other conspicuous places <u>and placed in a newspaper of general circulation in the Commonwealth, to appear in three consecutive issues</u>.

(Emphasis added.)

The plain meaning of this section mandates publication of the notice to bid.   The word "shall" is unambiguous under the context of Section 2415; it means "must."   The use of the word "shall" in the statute is mandatory and has the effect of creating a duty, absent any legislative intent to the contrary.   <u>People v. Richardson</u>, 470 N.E.2d 1024 (Ill. 1984); <u>Emwright v. King County</u>, 637 P.2d 656 (Wash. 1981).   This is particularly so when the

statute is addressed to public officials. <u>Davis v. Davis</u>, 708 P.2d 1102, 1107 n. 23 (Okl. 1985); <u>People v. Nicholls</u>, 359 N.E.2d 1095, 1099 (Ill.App. 1977). Section 2415 makes it mandatory for the notice to bid to be "made publicly." It requires the Board to both post <u>and</u> publish the notice.

The purpose of the bid publication requirement is to safeguard and promote the public interest. <u>See</u>, <u>e.g.</u>, <u>Tri-State Telephone & Telegraph Co. v. City of Thief River Falls</u>, 183 F. 854, 857 (D.Minn. 1911). The dissemination of information about the franchise's availability serves important public policies. First, the Board's publication of that information is intended to insure that fairness and integrity in the bidding process is promoted and that the general public is informed and is made aware of the availability of the franchise. Second, by disseminating information as to the availability of public franchises through the publication requirement of the Act, the public is assured that the bidder ultimately selected will be the best, most responsible person or entity to carry out the franchise activity. This way, the public interest is safeguarded and promoted.

Lastly, by attracting as many interested bidders as possible, the Act's notice provision is likely to generate a healthy response to compete for a scarce, public resource. Competition among bidders heightens the pecuniary value of the exclusive franchise. The public ultimately benefits through the increased competition among prospective bidders because the franchise is awarded to the best, most responsible bidder. Absent sufficient notice of the

franchise availability, the response from among prospective bidders would be minimal, as was the case here.

We cannot agree with the trial court's conclusion that "the Board's failure to follow the publishing requirement in 10 CMC § 2415 constituted an immaterial irregularity in the bidding process under 10 CMC Section 2416(f)." Section 2416(f) states:

> The Board reserves the right, by majority vote to reject any or all bids for good cause; to make further invitation for bids in the same manner as the original invitation; to waive immaterial irregularities in the bidding process; and to enter into a contract to let the franchise, without further invitation, if no bid is received on the first invitation.

(Emphasis added).

While the Board may have the discretion to consider as immaterial, say, a ministerial or typographical error in the notice to bid, we are not persuaded that the failure to comply with the Act's mandatory notice provision is an "immaterial irregularity in the bidding process" under Section 2416(f). Any discretion to waive the publication requirement would be contrary to a clear statutory duty and would unduly compromise the public interest which the Board is obligated to promote. The publication requirement is a material feature of the bidding process. See, Tri-state Telephone & Telegraph, supra.

Because the public notice provision is clearly mandatory and intended to advance the public interest, we hold that the Board's failure to publish the original notice to bid as required under Section 2415 of the Act was contrary to law, rendering the original

294

bidding process defective and requiring the Board to re-issue a second notice to bid.

## B. Estoppel.

### 1. Pleading of Estoppel.

On appeal, the Board contends that Aquino did not properly plead estoppel because the doctrine was first "pleaded" by Aquino in his proposed findings of fact and conclusions of law, which was submitted pursuant to the trial court's request at the conclusion of the presentation of the evidence. The Board claims that "estoppel has to be plead [sic] during trial and before the close of evidence." Brief of appellants at 18. This contention generally is correct where estoppel is pleaded as a defense by a defendant.

In this case, however, it was the plaintiff, Aquino, who sought the benefit of estoppel. Estoppel may be available to a plaintiff, even though not specifically pleaded, if established by the evidence. Varella v. Wells Fargo Bank, 15 Cal.App.3d 741, 93 Cal.Rptr. 428, 431 n. 4 (Cal.App. 1971) ("estoppel need not be pleaded where a plaintiff in whose favor it exists is without knowledge that his claim must ultimately rest on it."); Clevenger v. Clevenger, 189 Cal.App.2d 658, 11 Cal.Rptr. 707, 716 (Cal.App. 1961)(rule that estoppel must be pleaded "does not apply to a plaintiff's pleadings."); See also, Farley v. United Pacific Insurance Co., 525 P.2d 1003 (Ore. 1974). The trial court did not err when it considered Aquino's claim of estoppel.

2.    The Merit of Aquino's Estoppel Argument.

It is our opinion, however, that the trial court erred in applying the doctrine of estoppel against the Board. The trial court held that the Board was estopped from refusing to issue the license to Aquino because the Board had committed "affirmative misconduct." In a recent decision, we recognized that estoppel may be invoked against the government, particularly where estoppel is necessary to prevent manifest injustice. In the Matter of Blankenship, Bar Admission Appeal No. 92-001 (N.M.I. July 24, 1992). And, as the trial court in the instant case correctly noted, estoppel against the government is available where the actions of the government or its representative rise to a level of "affirmative misconduct." See, Pangilinan v. Castro, 2 CR 368, 372-74 (D.C.N.M.I. 1985); INS v. Hibi, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973).

Whether the Board's conduct and action as to Aquino constitutes affirmative misconduct is a question of law which we review de novo. Rider v. U.S. Postal Service, 862 F.2d 239 (9th Cir. 1988). We need not decide that specific issue, however, because we find that although the Board's conduct may have amounted to affirmative misconduct, estoppel cannot override the clear legal duty of the Board to publish the notice.

It is a maxim of law that "equity follows the law." The U.S. Supreme Court has held that "courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." I.N.S. v. Pangilinan, 486 U.S. 875, 883, 108 S.Ct.

2210, 2216, 100 L.Ed.2d 150 (1988). "Courts of equity are bound to follow express statutory commands to the same extent as are courts of law." In Re Shoreline Concrete Co., Inc., 831 F.2d 903, 905 (9th Cir. 1987). Thus, a court in equity may not do that which the law forbids. U.S. v. Coastal Refining and Marketing, 911 F.2d 1036 (5th Cir. 1991). Furthermore, "equity follows the law to the extent of obeying it and conforming to its general rules and policies whether contained in the common or statute law." 30A C.J.S. Equity Section 118 (West 1992).

We agree with the court in Emery Mining Corp. v. Secretary of Labor, 744 F.2d 1411 (10th Cir. 1984), which held that:

> "[a]pplication of the doctrine [of equitable estoppel against the government] is justified only where "it does not interfere with underlying government policies or unduly undermine the correct enforcement of a particular law or regulation." United States v. Browning, 630 F.2d 694, 702 (10th Cir. 1980). . . Equitable estoppel "may not be used to contradict a clear Congressional mandate," Worley v. Harris, 666 F.2d 417, 422 (9th Cir. 1982), as undoubtedly would be the case were we to apply it here."

Id. at 1416.

Similarly, were we to apply the doctrine of estoppel in this case, such would contradict the Act's underlying policy regarding publication of the notice to bid. As we held in Blankenship, "[e]stoppel will not be invoked against the government where it would defeat effective operation of policy adopted to protect the public." In the Matter of Blankenship, supra, slip op. at 5.

As earlier discussed, the central purpose of the Act's notice requirement is to advance the public interest. In determining whether estoppel was appropriately applied by the trial court, the

focus should be on the public policy underlying the publication requirement of the law, not the Board's negligence. For even if we agree that the Board's actions constituted "affirmative misconduct" under the circumstances presented by this case, the application of the doctrine of governmental estoppel against the Board would inappropriately elevate an equitable remedy over a clear statutory mandate. Furthermore, to require the Board to issue a franchise to Aquino would compound, rather than solve, the underlying problem because the Board has already issued the exclusive franchise to another person.

Accordingly, we hold that the trial court erred when it ruled that the Board was estopped from refusing to issue the license to Aquino.[2]

## C. The Indispensable Third-Party and the Validity of the Second Notice to Bid.

Whether Cing is an indispensable party to this lawsuit under Rule 19, Commonwealth Rules of Civil Procedure, was not raised below, and whether the second bid notice was valid was not adequately considered below. In the proceedings below, Aquino did not name Cing as a party, the Board never moved to join Cing, Cing did not attempt to intervene in the lawsuit, and the trial court did not raise the issue of Cing's joinder sua sponte. On appeal, however, the Board argues that Cing should have been joined as an

---

[2] By holding that the trial court erred in granting equitable relief, we do not reach the question of whether Aquino's prayer for damages has merit. Neither do we address the issue of whether the Board enjoys immunity under the Government Liability Act, 7 CMC Section 2201, et seq. These issues are not properly before us. See discussion, infra, at 15.

indispensable party.

Aquino argues that because the issue of Cing's indispensability to this lawsuit was not raised by the Board at trial, the issue is "deemed waived by the appellant" and cannot be asserted on appeal. Brief of appellee at 14-15. We disagree.

We may address the issue for the first time on appeal for two reasons. First, the issue of Cing's indispensability is purely one of law not relying on disputed factual issues. Ada v. Sablan, No. 90-006, 1 N.Mar.I. 164 (N.M.I. Nov. 16, 1990). The pertinent fact necessitating Cing's joinder is without dispute; he now holds the exclusive cockfighting franchise. Any decision or court order relating to an exclusive franchise invariably will affect the franchise holder.

Second, it was error for the trial court to issue an order clearly impacting upon Cing's license without first giving Cing an opportunity to be heard on the issues. Ada v. Sablan, supra. The franchise is a property right, Los Angeles v. Los Angeles Gas & Elec. Corp., 251 U.S. 32, 39, 40 S.Ct. 76, 79, 64 L.Ed. 121 (1919), of which Cing may not be deprived without due process of law. Commonwealth Constitution, Article I, Section 5.

We also note that under Rule 19(a), Com.R.Civ.Pro., Cing's joinder in this litigation is necessary for a just adjudication because (i) Aquino cannot gain complete relief in Cing's absence, (ii) as a practical matter, Cing's ability to operate his franchise will be impaired if he is not made a party, and (iii) the Board will incur inconsistent obligations if it granted a second

299

franchise when it is authorized to issue only one. Rule 19(a), Com.R.Civ.Pro.

Because the Board may issue only one franchise license, in order to require the Board to grant the exclusive license to Aquino, it is necessary for the Board first to revoke Cing's license. Cing certainly has an interest in maintaining his license, and neither the trial court nor the Board may revoke Cing's license without first according Cing notice and a meaningful opportunity to be heard. For these reasons, we hold that Cing is an indispensable party to the action.

Although the trial court went ahead and determined that the Board also failed to publish the second notice to bid, such determination directly impacts on Cing's interest. The validity of the bidding process through which Cing was awarded the franchise (including the second notice to bid) must be re-determined by the trial court with Cing as party to the proceedings. Cing must be given an opportunity to be heard on the issue and on any other relevant issues that may be raised.

If, on remand, the trial court still finds that the second notice to bid was defective and determines that Cing's license is invalid, it may then require the Board to revoke Cing's license and to re-bid the cockfighting franchise again.

## D. Subject-Matter Jurisdiction and Immunity.

The Board contends that the trial court lacked subject-matter jurisdiction over this case because Aquino failed to file his

action for court review within thirty (30) days of the Board's rejection of his bid. This contention has no merit. The provision of the Act which the Board relies on, Section 2413(c), authorizes the trial court to review Board decisions relating to "any dispute arising from cockfighting, including but not limited to, the revocation of a franchise license granted pursuant to this Article."

This case does not involve a cockfighting dispute. Nor does it concern the revocation of Aquino's franchise license. Aquino was never awarded the franchise. Rather, this is an action seeking to compel issuance of the license or, in the alternative, for damages. The 30-day limitation period of Section 2413(c) therefore does not apply.

Aquino's claim for damages has prompted the Board to raise the issue of whether the Board enjoys immunity from tort liability under 7 CMC Section 2211(a), which limits the liability of "public corporations, boards, and commissions." We cannot address the issue of the Board's tort immunity because the trial court did not award damages to Aquino; it granted him an equitable remedy. Because our reversal denies Aquino his equitable remedy, on remand the trial court may address, as it deems appropriate, the issue of damages suffered by Aquino, as well as the countervailing issue of governmental immunity raised by the Board.

## IV. CONCLUSION

For the reasons given, we **REVERSE** and **VACATE** the decision of

the trial court, and **REMAND** the case so that the trial court may order that David Cing be joined as an indispensable party and proceed with the case in a manner consistent with this opinion.

Dated this 25th day of September, 1992.

JOSE S. DELA CRUZ, Chief Justice

RAMON G. VILLAGOMEZ, Associate Justice

JESUS C. BORJA, Associate Justice